09-3772-cv(L)
Lore v. City of Syracuse

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2010

(Argued: November 19, 2010   Final Submission: December 7, 2010   Decided: February 2, 2012)

Docket Nos. 09-3772-cv(L), -4206-cv(XAP)

_____

THERESE LORE,

Plaintiff-Appellee-Cross-Appellant,

- v. -

CITY OF SYRACUSE,

Defendant-Appellant-Cross-Appellee,

CITY OF SYRACUSE POLICE DEPARTMENT; CHIEF OF POLICE JOHN FALGE in his individual and official capacity; FIRST DEPUTY CHIEF DANIEL BOYLE in his individual and official capacity; DEPUTY CHIEF ROBERT TASSONE in his individual and official capacity; CITY OF SYRACUSE MAYOR ROY BERNARDI in his individual and official capacity; LIEUTENANT MIKE RATHBUN in his individual and official capacity; CAPTAIN MIKE KERWIN in his individual and official capacity; RICK GUY, CITY CORPORATION COUNSEL, in his individual and official capacity; MICHAEL LEMM, in his individual and official capacity; JOHN DOE, in his individual and official capacity,

Defendants-Cross-Appellees.[*]

_____

---

[*]    The Clerk of Court is directed to amend the official caption to read as shown above.

Before: KEARSE, SACK, and LYNCH, Circuit Judges.

Appeal from so much of a judgment of the United States District Court for the Northern District of New York following a jury trial before David N. Hurd, Judge, as orders defendant City of Syracuse to pay plaintiff $417,955.34 in damages, attorneys' fees, and costs for retaliation against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and state law, for making complaints of gender discrimination; cross-appeal from so much of the judgment as dismisses plaintiff's other claims against the City and the individual defendants and denies plaintiff additional damages and fees.

Affirmed in part, vacated in part, conditionally affirmed in part, conditionally vacated in part, and remanded.

A.J. BOSMAN, Rome, New York (Bosman Law, Rome, New York, on the brief), for Plaintiff-Appellee-Cross-Appellant.

KEVIN E. HULSLANDER, Syracuse, New York, (Gabrielle Mardany Hope, Smith, Sovik, Kendrick & Sugnet, Syracuse, New York, on the brief), for Defendant-Appellant-Cross-Appellee and Defendants-Cross-Appellees.

KEARSE, Circuit Judge:

Defendant City of Syracuse ("Syracuse" or the "City") appeals from so much of a judgment of the United States District Court for the Northern District of New York, David N. Hurd, Judge, as orders the City to pay plaintiff Therese Lore, a member of the Syracuse Police Department ("SPD" or the "Department"), a total of $417,955.34, including $167,955.34 in attorneys' fees and costs, following a jury verdict (a) finding that the City, because of her complaints of gender discrimination, retaliated against Lore in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the New York State Human Rights Law ("HRL"), N.Y. Exec.

Law § 296 et seq., and (b) awarding her compensatory damages against the City totaling $250,000 for pain, suffering, emotional distress, and injury to her reputation as a result of the retaliation. On appeal, the City contends principally that as a matter of law Lore was not entitled to damages for injury to her reputation, that she did not prove that any emotional distress she suffered was caused by acts found to have been performed by the City or its employees, that there were various errors in the court's submission of the case to the jury, and that the damages awarded for emotional distress were excessive.

Lore cross-appeals, principally challenging so much of the judgment as dismisses her retaliation claims against individual defendants, dismisses her gender discrimination claims against the City and the individual defendants, and denies her additional damages and attorneys' fees. She contends principally that the district court erred (1) in having the jury decide whether defendant Rick Guy was entitled to qualified immunity, in failing to rule that he was not entitled to such immunity, and, given the jury's findings that Guy had intentionally retaliated against Lore and caused her injuries totaling $250,000, in not awarding her that amount in addition to the $250,000 awarded against the City; (2) in granting summary judgment dismissing her gender discrimination claims; (3) in failing to impose sanctions on defendants for noncompliance with discovery orders; and (4) in failing to award higher attorneys' fees. Lore also contends that she is entitled to a new trial on her retaliation claims against defendants Daniel Boyle and Mike Kerwin on the ground that the court improperly excluded evidence relevant to those claims.

For the reasons discussed in Part II below, we conclude that the City's appeal-- considered without reference to any relief to which Lore may be entitled on her cross-appeal-- provides no basis for overturning the judgment against the City. For the reasons discussed in Part III

3

below, we conclude that Lore's cross-appeal has merit only in its challenges to (A) the dismissal, on qualified immunity grounds, of her HRL claim against Guy, and (B) the grant of summary judgment dismissing her main discrimination claims under the HRL against the City and defendant Roy Bernardi, and that Lore was entitled to trial of those discrimination claims. However, because of the substantial overlap in the evidence relevant to Lore's retaliation claims against the City, which were tried, and her main HRL discrimination claims, which were summarily dismissed, and considering the intertwined nature of her retaliation claims against the City and those against Guy, we conclude that a trial of the erroneously dismissed HRL discrimination claims alone could lead to an award of damages that would be duplicative, in whole or in part, of the compensation Lore is awarded in the present judgment. Accordingly, as set out in Part V below, we conclude that if there is to be a trial of the HRL discrimination claims, that trial, in order to avoid an unjust outcome, must be combined with a retrial of Lore's Title VII and HRL retaliation claims against the City and her HRL retaliation claim against Guy. Because we see no other basis for disturbing the judgment against the City, and because we recognize that Lore may prefer to forgo pursuit of the HRL discrimination claims and retain the present award, we will only conditionally vacate so much of the judgment as dismisses the pertinent HRL discrimination claims and as awards damages, costs, and fees against the City. The vacatur will become effective if Lore elects to proceed to trial as indicated above.

## I.  BACKGROUND

As there has been a trial in this case, the following description includes facts that have been established by the jury's verdict (see Trial Transcript ("Tr.") at 1247-55), as well as pertinent

4

allegations in Lore's final amended complaint ("Complaint").  As Lore's claims of gender discrimination were dismissed on summary judgment, the record with respect to those claims is described in the light most favorable to Lore.

A.  The Parties and Lore's Claims

At all times pertinent to this case, Lore was a member of SPD.  She joined the Department as an officer in 1978; she was promoted to the rank of sergeant in 1990.  In January 1996, then-Chief of Police Timothy Foody invited Lore to join his staff as SPD's public information officer ("PIO"), serving as liaison between the Department and the media, i.e., the spokesman for the Department.

In May 1999, Lore was removed from her position as PIO.  (See Complaint ¶ 21.)  In June, she was transferred to SPD's Technical Operations Section; in August she was transferred to the Uniform Patrol Division.  (See Complaint ¶ 22-23.)  Lore, a member of the SPD force's union (the "Union" or "Police Union") (see Complaint ¶ 88), whose collective bargaining agreement (or "CBA") with the City prohibited the City from subjecting Union members to unlawful discrimination or retaliation (see id. ¶ 89; Plaintiff's Exhibit ("PX") MMM, art. 2, ¶ 2.1(B)), filed a grievance with the Union after she was removed from the PIO post.  This grievance was settled in December 1999 ("1999 Settlement Agreement"), with the City agreeing, inter alia, to assign Lore to the Department's Community Relations Division ("CRD") and to give her overtime assignments comparable to those of other CRD sergeants.

In June 2000, Lore discovered that she was receiving fewer overtime assignments than the other CRD sergeants.  Routinely, SPD employees retrieved their biweekly paychecks from an

open, uncovered box in the Department's Audit Budget and Control Office ("ABC Office")--a common area accessible to all SPD personnel (see Complaint ¶ 39)--and an accountant-clerk in that office testified that SPD employees routinely saw each others' checks as they searched for their own (see, e.g., Tr. 414). Attached to each check was a pay stub that separately itemized the employee's current and cumulative regular pay and overtime pay. Lore complained that the City had breached the 1999 Settlement Agreement by not giving her equal overtime assignments; and to document the disparity, she photocopied the three other CRD sergeants' pay stubs. An arbitration hearing was held on the disparity-in-overtime claim in September 2000 ("September 2000 Arbitration Hearing").

In the meantime, in July and August 2000, Lore filed verified complaints with the EEOC against SPD, the City's mayor, and the Department's top officials, complaining principally of gender discrimination and of retaliation for her complaints of gender discrimination. Her July EEOC complaint alleged, inter alia, that those defendants, motivated by her gender, had caused her removal from the PIO position without justification. It alleged that in retaliation for her complaints of discrimination, they had subjected her to, inter alia, a series of job transfers to less desirable positions; had assigned males who were junior to Lore in rank and seniority to positions that she had requested and for which she was qualified; and had denied Lore perquisites, such as overtime work, an office key, a computer, and a vehicle, that were given to males in comparable SPD positions. Her August EEOC complaint alleged that Boyle had retaliated against her for filing the July EEOC complaint.

At the September 2000 Arbitration Hearing on Lore's complaint that the City had breached the 1999 Settlement Agreement by depriving her of equal overtime assignments, Lore offered into evidence the photocopies she had made of the other CRD sergeants' pay stubs to support her claim of disparity. A City attorney threatened Lore with criminal prosecution for having copied

6

the pay stubs but told her attorney that the City would "'forego [sic] criminal and administrative charges'" against her if she dropped her EEOC complaints and grievances (Complaint ¶ 45). Lore refused to withdraw her EEOC complaints and grievances, and on November 3, 2000, she was charged administratively with personal use of a Department copier and was suspended for 10 days without pay. (See Complaint ¶¶ 46-47, 55.) Defendant Rick Guy, Corporation Counsel for the City, informed the news media that Lore had been suspended

and stated that she had copied "'checks'" and that her claims were intended "to 'divert attention from the real issue,' which was 'her poor job performance.'" (Id. ¶ 48; see id. ¶¶ 84, 86.)

In the present lawsuit, commenced in December 2000 under Title VII and the HRL for employment discrimination and retaliation, and under 42 U.S.C. § 1983 for violations of her rights under the Due Process and Equal Protection Clauses and the First Amendment, Lore asserted principally that her removal from the PIO position was motivated by gender discrimination and that she thereafter suffered retaliation because of her complaints to the Union and to the EEOC about gender discrimination. Lore's Complaint, as finally amended, was filed in mid-2001 after she was subjected to additional allegedly discriminatory treatment, including being deprived of her SPD beeper, vehicle, and cell phone, being deprived of opportunities for overtime assignments and other benefits, and receiving threatening and harassing messages on her home telephone answering machine (see Complaint ¶¶ 53, 95). The Complaint asserted claims against the City, SPD, eight named individuals in their personal and official capacities, and a "John Doe." The individuals, and their positions at the times of their alleged actions, were:

> Roy Bernardi, who, as Mayor of Syracuse in 1999 and 2000, was principally alleged to have "ordered" then-Chief Foody to remove Lore from the PIO position because Bernardi "believed that she had too much power or visibility with the police department, and that women should be seen and not heard" (Complaint ¶ 32), and to

7

have made false statements to the press about Lore in retaliation for her complaints of discrimination (see, e.g., id. ¶¶ 57-60, 82);

John Falge, the Chief of SPD beginning in August 1999, who was alleged to have been responsible for, inter alia, the training, supervision, and discipline of other defendants and to have retaliated against Lore by orchestrating postcomplaint criticisms of her job performance (see Complaint ¶¶ 5, 102);

Robert Tassone, a Deputy Chief of SPD, who was alleged to have been responsible for, inter alia, the training, supervision, and discipline of other defendants (see Complaint ¶ 7);

Daniel Boyle, First Deputy Chief of SPD, who the jury found had banned Lore from the normally accessible ABC Office and imposed on her certain conditions not applicable to others (see Tr. 1248), and who allegedly said he was imposing those conditions "'since [Lore is] suing us'" (Complaint ¶ 36);

Mike Rathbun, an SPD lieutenant who was alleged to have denied Lore requests for overtime work and to have told her that if she wanted such work she should withdraw her claims of discrimination, and to have retaliated against Lore by fabricating postcomplaint criticisms of her job performance (see Complaint ¶¶ 8, 51, 102);

Mike Kerwin, an SPD captain, who the jury found had threatened to give Lore Miranda warnings or charge her with a crime (see Tr. 1250);

Rick Guy, the City's Corporation Counsel, who the jury found made negative comments to news reporters about Lore in retaliation for her having complained of discrimination (see Tr. 1248-50);

Michael Lemm, a retired SPD officer who Lore believed had left an anonymous harassing message on her telephone answering machine (see Complaint ¶ 12); and

"John Doe," an alleged SPD officer who was another anonymous harassing caller (see Complaint ¶ 13).

Against the City, the Complaint principally asserted claims for discrimination, including creation of a hostile work environment, and retaliation under Title VII and the HRL. Against the individual defendants, the Complaint asserted discrimination and retaliation claims under Title VII and the HRL, and § 1983 claims for violations of Lore's First Amendment, due process, and

8

equal protection rights. It also asserted, inter alia, claims against all defendants for intentional infliction of emotional distress and claims against Bernardi, Guy, and the City for defamation.

The case was originally assigned to Judge Howard G. Munson. It was reassigned to Judge Hurd in 2008.

B. The Granting of Partial Summary Judgment

Following several years of discovery, the City and most of the individual defendants moved for summary judgment dismissing the Complaint against them on several legal grounds. They contended principally that Lore had no viable retaliation claim; they pointed out that she had not suffered any decrease in rank or salary, and they argued that she therefore could not show that she had suffered any materially adverse employment action. Lemm moved for summary judgment dismissing the claims against him on the ground that there was no proof that he had made any allegedly harassing telephone call. In a Memorandum-Decision and Order dated October 30, 2008, reported at 583 F.Supp.2d 345 ("Lore I"), the district court granted the motions in part and denied them in part. See 583 F.Supp.2d at 388-89. The court denied Lemm's motion insofar as it sought dismissal of Lore's HRL claim against him, ruling that his opposition to that claim (i.e., his assertion that he was not the person who made the harassing call) presented factual issues to be tried. See id. at 386-87. As to the other defendants, the court granted their motions in large part, dismissing all of Lore's claims against Falge, Tassone, and Rathbun, and dismissing most of her claims against the other individual defendants, on various grounds. See id. at 388-89.

Lore's Title VII claims against the individual defendants were dismissed on the ground that Title VII does not impose liability on individuals. See id. at 388. Although individuals may be

9

held liable under the HRL, whose prohibitions against employment discrimination are similar to those of Title VII, the court also dismissed Lore's HRL discrimination claims against the individual defendants--as well as all of her HRL and Title VII discrimination claims against the City--on the ground that, because her rank and pay had not been reduced when she was removed from the PIO position, Lore had suffered no materially adverse employment action. See id. at 376-80. (See Part III.B. below.) The court also ruled that all of Lore's claims against the City under Title VII for acts prior to September 19, 1999--the date calculated to be 300 days prior to the initiation of her complaints to the EEOC--were time-barred. And it dismissed all of Lore's state-law claims except those alleging reputational injury and emotional distress resulting from retaliation in violation of the HRL. See id. at 388-89.

Both sides moved for reconsideration of the summary judgment decision. The court denied the City's motion on the ground that it was untimely. See Memorandum-Decision and Order dated December 22, 2008, reported at 2008 WL 5378370 ("Lore II"), at *3. The court granted Lore's motion for reconsideration of various aspects of Lore I but adhered to its original decisions. See id. at *3-*11.

By the time of trial, the factual issues as to alleged retaliatory conduct had been narrowed, and Lore's factual allegations against the remaining defendants were described as follows in Court Exhibit 1 (as amended, see Tr. 23-24):

Boyle: "barring [Lore] from an office within the police department and requiring her to submit internal memorandums";

Guy and
Bernardi: "making negative comments about [Lore] to newspaper reporters";

Kerwin: "reading [Lore] Miranda warnings and threatening her with criminal charges";

10

| Lemm: | "leaving a harassing telephone message on [Lore's] answering machine"; |
|---|---|
| The City: | "offering to forgo criminal or administrative charges in exchange for [Lore's] withdrawl [sic] of her complaints of discrimination"; "suspending her for ten days and investigating her conduct." |

Court Exhibit 1 also noted Lore's assertion that the City was liable for the retaliatory acts of the officers of SPD (other than Lemm, who had retired prior to Lore's receipt of harassing telephone messages) and for breach of the CBA provision prohibiting unlawful retaliation in response to complaints of discrimination.

C. Lore's Evidence at Trial

At trial, Lore described her removal from her position as SPD's spokesman and testified that she filed grievances with respect to that removal. She testified that defendants had engaged in the conduct that was outlined in Court Exhibit 1, and she described the series of transfers she endured from the PIO position to less desirable and less prestigious job assignments.

As to her claims against Boyle, Lore testified that after she complained of discrimination, he banned her from SPD's ABC Office and required her, unlike other SPD employees, to submit any requests for information in written memoranda. The accountant-clerk of the ABC Office testified that after Lore photocopied other officers' pay stubs, Boyle, who was then SPD's First Deputy Chief, came into that office and angrily "said something to the effect of, keep [Lore] the heck out of here." (Tr. 409; see id. at 406-09, 411 ("if Teri Lore ever comes in this office again, throw her the heck out"), 414-15.) The accountant-clerk testified that she had never before been instructed "to give directions to police officers or sergeants." (Id. at 412.) She testified that a waist-high gate was subsequently erected at the ABC Office door because SPD "wanted to make sure that from now on,

11

there was some control of who just wandered into our office" (id. at 415), and that that gate became "generally known as the Teri Lore gate" (id. at 426).

As to her claims against Kerwin, Lore testified that in November 2000, she reported to Kerwin, a captain in SPD's training division, that she had aggravated an existing injury while she was moving targets at SPD's firing range. She testified that Kerwin rejected her injury report and threatened to give her Miranda warnings for attempting to file a false injury report--a response that Lore attributed to her having filed EEOC complaints. (See Tr. 139-52.)

As to her claim against Lemm, Lore testified that she recognized the voice in one of the harassing telephone messages she received as the voice of Lemm, with whom she had worked for 20 years. (See Tr. 157-59.)

As to her claims against Guy, Lore testified that when she was suspended for using a Department copier after refusing to withdraw her claims of gender discrimination, Guy made untrue and demeaning comments about her to the local media. She introduced, inter alia, newspaper articles quoting him and a videotape of his comments to a local television station. These exhibits included a two-paragraph article from the November 4, 2000 edition of a Syracuse newspaper, The Post-Standard, which was headlined "City suspends sergeant accused of check copying." (PX BB ("November 2000 Post-Standard article" or "November article").) That article, on the front page of the local news section, stated as follows:

> A Syracuse police sergeant was suspended without pay for 10 days Thursday after being accused of taking others' paychecks from the budget office, copying them and using them as evidence in her grievance hearing, Corporation Counsel Rick Guy said.

> Sgt. Teri Lore, 43, had filed a grievance saying others are allowed more overtime hours, he said. She was suspended after she turned in the copied documents, Guy said.

12

(Id.) An article in the December 30, 2000 edition of the same newspaper (PX EE ("December 2000 Post-Standard article")) reported the filing of Lore's present action and reported Guy's comments on it. That article, headlined "Police sergeant sues for $4M," included the following paragraphs:

> City Corporation Counsel Rick Guy denied Lore's allegations. He said Lore has filed eight grievances against the department in the past 10 years.
>
> "She has been denied at every single avenue she's gone down and rightly so," Guy said. "The allegations in this thing are ridiculous. The whole thing is an absolute waste of taxpayer money. It reeks of a frivolous and meritless lawsuit. There was no discrimination because of her gender. She wasn't doing her job."

(PX EE.) Guy's televised comments on Lore's lawsuit included the statement that "[t]his matter has been adjudicated in the administrative side of [things] several times--each time in favor of the police department. Frankly, we consider this to be a red herring--a distraction, if you will, from the real issue here--which is her poor job performance." (PX FF.)

Lore testified that there was no basis for Guy's statements that she wasn't doing her job or that her performance was poor. She testified that, prior to her copying of the pay stubs of three other sergeants to document her claim that the City had breached its agreement with respect to overtime assignments, she had never before been disciplined or even criticized for not doing her job. (See Tr. 171-72.)

> Q. So when Mr. Guy said you weren't doing your job, do you have any idea what he is referring to?
>
> A. I have no idea.

(Id. at 172.) Although in his opening statement defense counsel had argued that Guy could not properly "be sued for publicly commenting on something that is truthful" (Tr. 86), the City introduced no evidence at trial as to Lore's job performance except Guy's testimony that he had been told that

13

Lore performed poorly in the PIO position (see, e.g., id. at 917 (that Lore had "temperature [sic] tantrums with members of the media")). The only documentary evidence introduced as to Lore's job performance was introduced by Lore: a selection of letters of praise and commendation that she had received during the course of her career at SPD. Nearly two-thirds of the 20-odd letters that were introduced had come from SPD's chief of police or a deputy chief or the office of the district attorney. (See Tr. 181-82; PX NNN.)

Lore testified that her "reputation was spotless until" the appearance of the November 2000 Post-Standard article citing Guy. (Id. at 197.) Although she had copied only pay stubs, she received "[n]egative" attention (Tr. 168-69) in the wake of that article reporting that she had been suspended for "taking" and copying "others' paychecks" (PX BB (emphasis added)). She testified that she was approached in public by people who asked "why would you copy people's checks?" or "[w]hat did you need to steal checks for?" (Tr. 196-97.) Lore testified that despite her protests that she had not copied checks, and had not stolen anything, her reputation was "[t]otally damaged. It went from one extreme to the other." (Id. at 197.)

Lore testified that there were many SPD officers who no longer wanted to associate with her as a result of what was going on in 2000 and 2001. Lore's mother testified that Lore's fellow officers, who used to congregate with Lore at the mother's house at night after their shifts ended, stopped coming around. (See Tr. 566.)

Lore testified that the events from early 2000 until August 2001 turned her, emotionally, into "a totally different person," one who "couldn't deal with the stress, the anxiety," who had "[t]ension headaches" and "stomach problems" and "was vomiting," and who "couldn't sleep" because she "was fearful." (Tr. 191-92.) Stress had prompted Lore to consult a doctor in February

or March 2000, and her doctor had prescribed an antidepressant. (See id. at 189-90.) While taking the medication she suffered side effects including vomiting and diarrhea; her use of the medication was gradually reduced, and she ceased taking it in late 2000 or early 2001. (See id. at 195.)

Lore and her mother described Lore as a gregarious person prior to the events of 2000-2001 (see, e.g., id. at 192, 569); they testified that as a result of those events Lore became reclusive (see, e.g., Tr. 193, 568-69). Lore's mother testified that Lore "cried and cried and cried" (id. at 569) and seemed "ready for a nervous breakdown," causing the mother to be "afraid [Lore wa]s going to do something to hurt herself" (id. at 568).

Lore testified that in late 2000 or early 2001, she stopped seeking advancement within SPD, declining to renew, for example, her request for a transfer to the Criminal Investigation Division, where the responsibilities would be greater (see, e.g., Tr. 202-03) because she knew, based on the attitudes of her superiors, that her transfer requests would be denied (see, e.g., Tr. 201-02). In late June 2001, Lore's doctor notified SPD that Lore needed to be taken out of work for about a week to be treated for "recurrent depression." (PX ZZ.)

At the close of Lore's case, her retaliation claims against Bernardi were dismissed as a matter of law, over her objection, for lack of evidence as to any statements about Lore to the press by Bernardi. (See Tr. 886-88.) The remaining individual defendants testified that they had not engaged in the conduct described by Lore, or had had no knowledge of her complaints of discrimination at the time of their acts, or had had no intent to retaliate against her.

D. The Jury's Verdicts

The jury was instructed to return verdicts with answers to written questions with respect to Lore's claims under § 1983 and the HRL against Boyle, Kerwin, and Guy, her claim under the HRL against Lemm, and her claims under the HRL and Title VII against the City itself (i.e., claims not asserted against any individual defendant). With respect to each of those defendants, a series of interrogatories asked principally (1) whether the defendant had engaged in specified conduct; (2) if so, whether the defendant was aware of Lore's discrimination complaints at the time of that conduct; (3) if so, whether the defendant's conduct constituted a "material adverse employment" action against Lore; (4) if so, whether Lore's complaints of discrimination were "a motivating factor" in the defendant's acts "of retaliation"; (5) if so, whether Lore "sustain[ed]" any "actual damages because of" the defendant's acts "of retaliation"; and (6) if so, what "amount of actual damages," if any, the jury awarded Lore "as a result of being retaliated against" by that defendant. (Verdict Form, May 27, 2009, at 2-16.)

The court, after instructing the jury with respect to burdens of proof and the elements of Lore's claims, also charged the jury on federal law governing qualified immunity (see Tr. 1233-35). It instructed that if the jury found that Lore had been subjected to unlawful retaliation by Boyle, Kerwin, or Guy--i.e., the remaining defendants who were SPD employees at the time of their alleged conduct--the jury must then consider whether that defendant was entitled to qualified immunity. (See Part III.A. below.) The Verdict Form submitted to the jury included that contingent qualified-immunity question. (See Verdict Form at 17.)

After deliberating for less than three hours, the jury returned a verdict in favor of Lore against the City. The jury rejected Lore's retaliation claims against Boyle because, although the jury

found that he had banished Lore from the ABC office and required her to submit future information requests in writing, it found that Lore had not proven that Boyle was aware of her discrimination complaints when he did so. (See Verdict Form at 2.) The jury rejected Lore's retaliation claims against Kerwin, finding that although he was aware of her complaints of discrimination and threatened to give Lore Miranda warnings or to charge her with a crime, and although this constituted a material adverse employment action, Lore had not proven that Kerwin's threats were motivated by her discrimination complaints. (See Verdict Form at 8-9.) The jury rejected Lore's claim against Lemm because it found that Lore had not proven that he left a harassing message on her answering machine. (See Verdict Form at 11.)

As to Guy, the jury found that he made negative comments about Lore to news reporters; that he was aware at that time that Lore had filed an EEOC complaint; that Guy's comments constituted materially adverse employment action; that Lore's discrimination complaints were a motivation for Guy's acts of retaliation; and that as a result of his retaliatory acts, Lore suffered actual damages in the amounts of $100,000 for harm to her reputation and $150,000 for pain, suffering, and emotional distress. (See Verdict Form at 5-7.) However, the jury answered "Yes" to the question of whether Guy was entitled to qualified immunity. (See id. at 17.)

As to the City, the jury answered "Yes" to the question of whether the City, "through the conduct of its employees or representatives, engage[d] in the following actions: a) offering to forgo criminal and administrative charges against . . . Lore in exchange for her withdrawal of her complaints of discrimination; or b) suspending . . . Lore for ten days and seeking a criminal investigation of her conduct." (Verdict Form at 14.) The jury found that the City, "through its employees and representatives," was "aware of . . . Lore's complaints of discrimination with the

17

EEOC at the time either of the above-mentioned acts occurred"; that the City's "above-mentioned acts (a. or b.), through the conduct of its employees and representatives, constitute[d] material adverse employment actions"; that "Lore's complaints of discrimination [were] a motivating factor" for the City's "above-mentioned acts (a. or b.) of retaliation"; and that "because of" the City's "acts of retaliation," Lore suffered actual damages in the amounts of $100,000 for harm to her reputation and $150,000 for pain, suffering, and emotional distress.  (Verdict Form at 14-16.)

The court ruled that, based on the jury's various findings, "there is a verdict of two hundred and fifty thousand dollars against the City of Syracuse and a verdict of no cause for action against Defendants Boyle, Kerwin, Guy, and Lemm.  The verdict of no cause against Mr. Guy is based on the verdict of him being entitled to qualified immunity." (Tr. 1256.)  Lore and the City thereafter made posttrial motions asking the court to set aside the parts of the jury's verdict that were, respectively, adverse to them.  In an order dated August 7, 2009, reported at 2009 WL 2473508 ("Lore III"), the district court denied the motions, ruling principally that they were either untimely or meritless, see id. at *1-*2.  For example, the court noted that the jury found that the City knew in July that Lore had made copies of other officers' pay stubs, and that the jury likely found the City's belated suspension of Lore suspicious:

> The jury could well have concluded that if plaintiff had actually engaged in the serious criminal conduct as alleged by the Police Department, charges would have immediately been filed against her and the matter would have immediately been referred to the District Attorney's office.  By waiting over two months [after the September hearing] to file charges and refer the matter to the District Attorney's office,--and only after plaintiff refused to withdraw her EEOC complaint--the jury was justified in concluding that the City employees and representatives were motivated by retaliation against her in violation of the Human Rights Law and Title VII.

Lore III, 2009 WL 2473508, at *1.

18

In an order dated September 11, 2009, reported at 2009 WL 2957784 ("Lore IV"), the court granted in part Lore's request pursuant to 42 U.S.C. § 1988 for attorneys' fees and costs, awarding a total of $167,955.34, see id. at *1-*2 (see Part III.C.5. below).

On the basis of the jury's verdict, the orders of dismissal prior to trial, and the dismissal of the claims against Bernardi during trial, the court entered a final judgment dismissing Lore's claims against all defendants other than the City. On the basis of the jury verdict awarding Lore $250,000 in compensatory damages against the City and the court's award of fees and costs, the court entered judgment ordering the City to pay Lore a total of $417,955.34. Execution of the judgment was stayed pending appeal, with the City being required to post a $600,000 supersedeas bond.

E. Issues on Appeal

The City has appealed, challenging the judgment against it on legal, procedural, and evidentiary grounds (see Parts II and IV below). Lore filed a cross-appeal stating that she wished to challenge all parts of the judgment and the prejudgment and postjudgment orders that were adverse to her. However, not all such decisions are discussed in Lore's briefs on appeal. For example, other than apparently referring to all individual defendants in contending that the district court erred in granting summary judgment dismissing her HRL discrimination claims on the ground that she had suffered no materially adverse employment action, Lore's briefs contain no mention of Tassone and Rathbun at all. Lore's briefs also contain no discussion of the dismissals of her Title VII claims against any individual defendant; of her due process claims against any defendant; of her common-law claims against any defendant for defamation and intentional infliction of emotional distress; or of her Title VII claims against the City for hostile work environment, or retaliation in the form of

19

unfavorable performance reviews after she filed complaints of discrimination, or loss of overtime pay, or any conduct predating September 19, 1999. We regard as waived any challenges by Lore to adverse decisions that are undiscussed. See generally Jackler v. Byrne, 658 F.3d 225, 233 (2d Cir. 2011); Day v. Morgenthau, 909 F.2d 75, 76 (2d Cir. 1990). And although Lore criticizes the district court's rulings that she failed to show a "custom, policy or practice of the City of Syracuse"--such as would be necessary to maintain a § 1983 claim against the City--and "failed to allege a cause of action under the Equal Protection Clause" (Lore's reply brief on appeal at 3-4), such criticisms appear only in Lore's reply brief. As Lore herself points out--with respect to an argument first made by the City in its reply brief--"issues not raised in [a party's] opening brief are considered abandoned" (Lore's brief on appeal at 54 n.7). In Parts III and IV below, we discuss only Lore's principal contentions that are properly presented.

In assessing each side's contentions on appeal, we bear in mind, inter alia, (1) that Lore had the burden of proving by a preponderance of the evidence each of the elements of her claims against each defendant; (2) that a defendant has the burden of proof with respect to affirmative defenses, and qualified immunity is such a defense, see, e.g., Gomez v. Toledo, 446 U.S. 635, 640 (1980); Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982); Jules Rabin Associates, Inc. v. Landon, 38 N.Y.2d 827, 828, 382 N.Y.S.2d 45, 45 (1976); (3) that the weight of the evidence, while a basis for argument to the jury, is not a ground for reversal on appeal, see, e.g., Robinson v. Cattaraugus County, 147 F.3d 153, 160 (2d Cir. 1998); Piesco v. Koch, 12 F.3d 332, 345 (2d Cir. 1993); Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 54 (2d Cir. 1993); and (4) that a jury is entitled to believe part and disbelieve part of the testimony of any given witness, see, e.g., Robinson v. Cattaraugus County, 147 F.3d at 160; Fiacco v. City of Rensselaer, 783 F.2d 319, 325 (2d Cir. 1986), cert. denied, 480 U.S.

20

922 (1987), and its assessments of witness credibility and its choices between competing factual inferences are not to be second-guessed, see generally Anderson v. Bessemer City, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). With respect to factual findings by the jury that were favorable to Lore, we view the trial record in the light most favorable to her.

## II. THE CITY'S CHALLENGES WITH REGARD TO LIABILITY

The City urges that we reverse or vacate the judgment entered against it on various grounds. It contends, inter alia, that the district court should have granted judgment as a matter of law (or "JMOL") dismissing Lore's breach-of-contract claim and dismissing so much of her retaliation claims as sought damages for reputational injury on the ground that reputation damages are unavailable as a matter of law; and it contends that it was entitled to JMOL dismissing Lore's claims for emotional injury or injury to her reputation on the ground that there was insufficient trial evidence to support findings that any such injuries were caused by culpable acts that the jury found had been committed by the City or its employees. Alternatively, the City contends that it is entitled to a new trial because of errors in the admission of evidence, in instructions to the jury, and in the form of certain questions in the jury interrogatories. The City also contends, as discussed in Part IV below, that, even if there were no trial errors, the jury's award of $150,000 in damages for emotional distress was excessive and that this Court therefore should either order a new trial limited to such damages or order a new trial unless Lore agrees to accept a reduction of that award from $150,000 to $15,000. For the reasons that follow, we conclude that although the trial was not without flaws, the City's arguments present no basis for disturbing the judgment against it.

21

A. The City's Legal Arguments

The City contends that it was entitled to judgment as a matter of law dismissing Lore's claims (1) for breach of its contract with the Police Union, (2) for injury to her reputation, and (3) for pain, suffering, and emotional distress. Some of these contentions are not preserved for appellate review; and none of them provides a basis for reversal.

We review the denial of a motion for judgment as a matter of law de novo. See, e.g., Sanders v. New York City Human Resources Administration, 361 F.3d 749, 755 (2d Cir. 2004). And whether conducting review de novo or under a less sweeping standard, we "must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. A substantial right is not implicated if there is no likelihood that the error or defect affected the outcome of the case. See, e.g., Tesser v. Board of Education, 370 F.3d 314, 319 (2d Cir. 2004).

1. The Breach of Contract Claim

After both sides had rested at trial and before any claims were submitted to the jury, the City moved pursuant to Fed. R. Civ. P. 50(a) for judgment as a matter of law dismissing, inter alia, Lore's claim that the City's retaliation against her for filing complaints of discrimination breached its collective bargaining agreement with the Police Union. The City argued principally that since Lore was not a party to the CBA, she was not entitled to sue the City for its alleged breach. (See Tr. 1079-80.) The district court denied the Rule 50(a) motion, allowing the breach-of-contract claim to be submitted to the jury. Following the jury's verdict, the City moved pursuant to Fed. R. Civ. P. 50(b) for the entry of JMOL in its favor on a number of issues, but it did not mention the breach-of-

22

contract issue until it filed a reply brief in support of that motion. In <u>Lore III</u>, the court rejected the City's contention that it was entitled to relief because of the submission of the contract claim to the jury, stating as follows:

> It appears as if the defendant City of Syracuse may not have raised an appropriate or timely objection to submissions of the breach of contract claim to the jury. In any event, in view of the evidence of Human Rights Law and § 1983 violations by the City, the submission of the breach of contract claim to the jury, even if incorrect, was harmless error. However, it is unclear from the verdict form whether or not the jury actually made a specific finding of breach of contract against the City. Therefore, prejudgment interest will not be awarded.

<u>Lore III</u>, 2009 WL 2473508, at *2.

The City's objection to the submission of Lore's breach-of-contract claim to the jury has merit. Under New York law,

> when an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract. Unless the contract provides otherwise, only when the union fails in its duty of fair representation can the employee go beyond the agreed procedure and litigate a contract issue directly against the employer . . . .

<u>Board of Education v. Ambach</u>, 70 N.Y.2d 501, 508, 522 N.Y.S.2d 831, 834 (1987), <u>cert. denied</u>, 485 U.S. 1034 (1988). So long as "the discrete fair representation question still needs to be litigated," there can be no resolution on the employee's breach-of-contract claim against the employer. <u>Matter of Obot</u>, 89 N.Y.2d 883, 886 n.*, 653 N.Y.S.2d 245, 246 n.* (1996). No claim against the union was asserted by Lore in this case. Thus, we agree with the City that Lore's breach-of-contract claim against the City should have been dismissed as a matter of law.

We agree with the district court's conclusion, however, that even if the City's challenge to the submission of the breach-of-contract claim to the jury was preserved, despite its not being made

23

in the City's main memorandum of law in support of its Rule 50(b) motion, the submission of that claim to the jury was an error that was entirely harmless. The pertinent section of the Verdict Form bore the heading "**E. Claims of Retaliation Against Defendant City of Syracuse (Human Rights Law, Title VII, and Breach of Contract)**." (Verdict Form at 14.) Despite the mention of breach of contract in this heading, all of the questions that followed (see Part I.D. above) were directed only toward the elements of Lore's claims under Title VII and the HRL, e.g., whether the City, through its employees or representatives, engaged in specific conduct, whether that conduct constituted materially adverse employment action against Lore, whether the City knew of Lore's complaints of discrimination at the time of the adverse action, and whether the retaliatory conduct was motivated by those complaints. No interrogatory posed any question about a contract issue. The jury's answers to the questions that were posed in that section sufficed to support findings that the City violated Title VII and the HRL; and the district court made no award of prejudgment interest, which would have been mandatory if the judgment against the City had been for breach of contract, see N.Y. C.P.L.R. § 5001(a) (2000) ("Interest shall be recovered upon a sum awarded because of a breach of performance of a contract . . . ." (emphasis added)).

We conclude that neither the inclusion of "Breach of Contract" in the Verdict Form's section heading nor any instructions to the jury on the subject of breach of contract affected the City's rights.

2. The Reputational Injury Claims

The City contends that it was entitled to judgment as a matter of law dismissing Lore's claims for injury to her reputation. In its brief on appeal, the City initially argued that damages for

24

injury to reputation (1) are not available as a matter of law (City's brief on appeal at 38), or (2) are not available without proof of some injury in addition to the injury to reputation (see id. at 36-38) (the "stigma plus" contention), or (3) were not proven (a) because "[t]here is no evidence in this record of any harm to plaintiff's reputation" (id. at 29), and (b) because Lore failed to show that acts of the City for which it was held liable proximately caused any harm to her reputation (see id. at 38). After oral argument of the present appeals, the City submitted a letter brief in response to questions from this Court and seemed to retreat from its first contention, i.e., that reputational damages simply are unrecoverable in an action under Title VII or the HRL, and rested its JMOL request on the insufficiency of Lore's evidence. The City's letter suggests that its challenge to the award of reputational damages may be merely that "Lore is not entitled to reputation damages under the facts of this case because no causally-related damages were proved." (Letter from Gabrielle Mardany Hope dated November 29, 2010 ("City's Postargument Letter"), at 3 (emphasis in original).) None of the City's arguments provides ground for reversal.

In order for a party to pursue a request for JMOL on appeal, the party must have made timely motions for JMOL in the district court. Rule 50 of the Federal Rules of Civil Procedure provides in part that "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). The principal purpose of the requirement that any such motion be made before the case is submitted to the jury is "to assure the responding party an opportunity to cure any deficiency in that party's proof." E.g., Piesco v. Koch, 12 F.3d at 340; see, e.g., Baskin v. Hawley, 807 F.2d 1120, 1134 (2d Cir. 1986). To ensure that that opportunity is a "fair" one, Piesco v. Koch, 12 F.3d at 340, Rule 50(a) also provides that "[t]he motion must specify the judgment sought and the law and facts that entitle the movant to the judgment," Fed. R. Civ. P.

25

50(a)(2) (emphases added). "[T]he specificity requirement is obligatory." Holmes v. United States, 85 F.3d 956, 962 (2d Cir. 1996) (internal quotation marks omitted). A Rule 50(a) motion requesting judgment as a matter of law on one ground but omitting another is insufficient to preserve a JMOL argument based on the latter. See, e.g., id. at 961-63; Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 164 (2d Cir. 1998).

If the Rule 50(a) motion is not granted, the movant may, no later than 28 days after the entry of a judgment, "file a renewed motion for judgment as a matter of law." Fed. R. Civ. P. 50(b) (emphasis added). However,

> [b]ecause the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion. The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available. The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury.

Fed. R. Civ. P. 50 Advisory Committee Note (2006) (emphasis added); see, e.g., id. Advisory Committee Note (1991) ("[a] post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion"); Holmes v. United States, 85 F.3d at 962. As to any issue on which proper Rule 50 motions were not made, JMOL may not properly be granted by the district court, or upheld on appeal, or ordered by the appellate court unless that action is required in order to prevent manifest injustice. See, e.g., Kirsch v. Fleet Street, Ltd., 148 F.3d at 164; Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 287 (2d Cir. 1998).

Although the City made two Rule 50(a) motions (one after Lore rested, and the second after the defendants rested), neither of them asserted either that reputational damages are unavailable to a Title VII or HRL plaintiff or that Lore could not be awarded such damages because of an

26

insufficiency in her evidence. The City's 50(a) motions requested JMOL on the ground of lack of evidence on other specified issues (see Tr. 1079-86) or on the inappropriate ground that several individual defendants' testimony disputed Lore's testimony as to various events (see, e.g., id. at 889, 1080-81; see also id. at 1084 (citing testimony by a nondefendant witness that certain statements had not been made)). But there was no argument in either of the City's Rule 50(a) motions that reputational damages were unavailable as a matter of law, or that Lore had failed to prove "stigma plus," or that Lore had failed to present evidence of causation. Indeed, there was no mention of reputation at all.

The City's postverdict motion pursuant to Rule 50(b) did include a section asserting that Lore was "NOT ENTITLED TO REPUTATIONAL DAMAGES AS A MATTER OF LAW" and proffered the City's doctrinal and sufficiency bases for that assertion. (See City's Post-Trial Memorandum of Law at 14-17.) It asserted, inter alia, that "to recover for loss of reputation, plaintiff would have had to offer more evidence than just her own testimony." (Id. at 17.) But this argument was not a renewal of any argument made in the City's Rule 50(a) motion, and its assertion postverdict plainly did not give Lore the requisite opportunity to cure any perceived deficiency in her proof before the case was submitted to the jury. The district court, in ruling on the City's Rule 50(b) motion, did not address the challenge to reputational damages except implicitly in its observation that some of the City's arguments "ha[d] been waived by failing to timely object, or to raise the issue," Lore III, 2009 WL 2473508, at *2. We conclude that the City's request for judgment as a matter of law dismissing Lore's claims for injury to her reputation was not properly preserved because it was not raised in the City's Rule 50(a) motion.

27

Nor can we conclude that justice requires that we overlook the City's procedural default, on the basis of either the law or the state of the record. As to the law, EEOC guidelines with respect to private actions under Title VII state that

> [d]amages are available for the intangible injuries of emotional harm such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Other nonpecuniary losses could include injury to professional standing, [and] injury to character and reputation . . . .

EEOC, Enforcement Guidance: Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991 (July 14, 1992), http://www.eeoc.gov/policy/docs/damages.html (last visited Feb. 1, 2012) (emphases added). Although a showing of "stigma plus" is required with respect to defamation-type claims under the Due Process Clause, see, e.g., Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004); Neu v. Corcoran, 869 F.2d 662, 667 (2d Cir.) ("Paul[ v. Davis, 424 U.S. 693 (1976)] has been widely interpreted as holding that 'stigma plus' is required to establish a constitutional deprivation" (emphasis added)), cert. denied, 493 U.S. 816 (1989), the EEOC guidelines contain no suggestion that "stigma plus" is a prerequisite to recovery for reputational injury on a claim under Title VII.

As to the record, the district court found that "[t]he jury verdict was justified by the law and the evidence," Lore III, 2009 WL 2473508, at *1, and the City's contention that "[t]here is no evidence in this record of any harm to plaintiff's reputation" (City's brief on appeal at 29) is frivolous. The record includes testimony by Lore that, as a result of the retaliation that followed her complaints of discrimination, she was shunned by many fellow SPD members and was approached by civilians in public who interpreted the news reports of Guy's statements as indicating that Lore had stolen other officers' paychecks. The City's argument that Lore did not, for example, give the names of the persons who shunned or criticized her goes not to the admissibility of the evidence but rather to its weight,

28

which is not a ground for appeal. We see no proper basis for disturbing the jury's assessment of that evidence or its conclusion that defendants' retaliatory actions caused Lore reputational injury.

### 3. The Emotional Distress Claims

The City contends that it was entitled to judgment as a matter of law dismissing Lore's claims for emotional distress on the ground that she failed to present evidence that any such distress was caused by the conduct in which the City was found to have engaged. This contention suffers the same flaws as the City's contention that it was entitled to JMOL on the claims for reputational injury. Neither of the City's Rule 50(a) motions mentioned any perceived insufficiency in Lore's evidence that she suffered emotional distress as a result of the retaliatory treatment by the defendants.

The City also argues that the jury's award to Lore of $150,000 for her emotional distress was excessive. That contention is discussed in Part IV below.

### B. The City's Claims of Trial Error

The City argues alternatively that it is entitled to a new trial on the grounds that the district court erroneously admitted testimony as to the dismissed discrimination claims and testimony by Lore's expert witness; that it failed to instruct the jury that the discrimination claims had been dismissed and failed to instruct the jury properly on the issue of causation; and that the Verdict Form given to the jury inappropriately contained compound questions. We see no basis for a new trial in the court's instructions. And although we question the court's admission of the expert's testimony, and we find error in the Verdict Form's use of compound questions, the former was harmless, and the City did not preserve its right to appeal the latter.

1. Lore's Expert Witness

The City complains that, over defense objections, the court allowed Lore to present expert testimony by William Kenneth Katsaris, a former police officer and county sheriff with a master's degree in science, who had fulfilled all the non-dissertation requirements for a doctorate in public administration, and who was a state police academy instructor on, inter alia, "issues relating to civil rights, discrimination, harassment retaliation for issues of complaints that may be lodged within the law enforcement agency" (Tr. 781; see id. at 776-84). Katsaris, testifying as "an expert in law enforcement" (Tr. 784), was allowed to opine that SPD's treatment of Lore reflected retaliation for her having filed complaints of discrimination. (See, e.g., id. at 786-87 ("I believe very strongly there was [sic] elements of retaliation, between four and five occasions at least, for what appeared to be her filing of grievances and her EEOC complaint.").) Katsaris gave his opinion, with a "reasonable degree of certainty," that "Lore was subjected to retaliation for making a complaint of discrimination" (id. at 798-99; see id. at 788) when defendants, inter alia, prevented her from entering the ABC Office or from filing an injury report, or threatened her with criminal charges (see, e.g., id. at 788-90, 812-13).

We apply abuse-of-discretion review to a trial court's evidentiary rulings, see, e.g., Old Chief v. United States, 519 U.S. 172, 174 n.1 (1997); United States v. Abel, 469 U.S. 45, 54-55 (1984), including those as to the admissibility of expert testimony, see, e.g., General Electric Co. v. Joiner, 522 U.S. 136, 138-39, 141-43 (1997). The hallmark of abuse-of-discretion review is deference, see, e.g., id. at 143; and a ruling on the admissibility of expert testimony "is to be sustained unless manifestly erroneous," Salem v. United States Lines Co., 370 U.S. 31, 35 (1962). Further, an erroneous evidentiary ruling warrants a new trial only when "a substantial right of a party is affected,"

30

as when "a jury's judgment would be swayed in a material fashion by the error." Arlio v. Lively, 474 F.3d 46, 51 (2d Cir. 2007); see Hester v. BIC Corp., 225 F.3d 178, 181 (2d Cir. 2000); Fed. R. Evid. 103(a).

The City argues that the admission of Katsaris's opinions was error on the ground that "testimony that embraces the ultimate conclusion to be reached in a case is impermissible." (City's brief on appeal at 51; see also id. at 49-50.) We reject that contention, given the provision in Rule 704(a) of the Federal Rules of Evidence that, with an exception not applicable here, opinion testimony that is otherwise admissible is not objectionable merely because it "embraces an ultimate issue" to be decided by the factfinder. Fed. R. Evid. 704(a). Rather, our difficulty with the admission of Katsaris's testimony is that his opinions did not seem likely to help "the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702. While the matter of whether a given defendant impermissibly retaliated against Lore had several components--(a) did the defendant perform the acts alleged by Lore, (b) at the time of those acts did the defendant know of Lore's complaints of discrimination, (c) were those acts motivated by Lore's complaints of discrimination, and (d) did those acts constitute materially adverse actions--those components are relatively straightforward.

However, we need not decide whether the admission of Katsaris's testimony constituted an abuse of discretion, for even if it did, the admission of his opinions was harmless, as the jury--quite clearly--was not unduly influenced by them. Contrary to Katsaris's stated opinions, the jury found that Lore had not proven her retaliation claims against three of the four individual defendants under consideration. Further, the jury's answers to the interrogatories reflected a painstakingly focused approach that resulted in no two sets of answers being the same. Thus, while finding that Lore had proven all the elements of her retaliation claims against Guy, it found that Lore had failed (a) to prove

31

that Lemm engaged in the conduct of which he was accused, (b) to prove that Boyle, when engaging in conduct adverse to Lore, had known of Lore's complaints of discrimination, and (c) to prove that Kerwin, when engaging in conduct adverse to Lore while knowing of her complaints of discrimination, was motivated by her complaints. Given the jury's findings on Lore's claims of retaliation, we cannot conclude that Katsaris's testimony swayed the jury in any material fashion.

2.  Instructions to the Jury

With respect to the charge to the jury, the City does not point to any allegedly erroneous statement but complains that the court did not instruct the jury (a) that Lore's discrimination claims had been dismissed (see City's brief on appeal at 54), and (b) that Lore "was obligated to prove intent on her retaliation claims **or** that [Lore] had to prove her damages were proximately caused by the incidents for which a particular defendant was found liable" (id. at 53 (emphases in original)). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Perry v. Ethan Allen, Inc., 115 F.3d 143, 153 (2d Cir. 1997) ("Perry") (internal quotation marks omitted). "[A] jury instruction will be deemed adequate if the charge . . . is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it." Schermerhorn v. Local 100, Transport Workers Union of America, 91 F.3d 316, 322 (2d Cir. 1996) (internal quotation marks omitted).

"We review a claim of error in the district court's jury instructions de novo, and will reverse on this basis only if the appellant can show that the error was prejudicial in light of the charge as a whole." Perry, 115 F.3d at 153. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). If the

32

instructions, read as a whole, presented the issues to the jury in a fair and evenhanded manner, they do not warrant reversal. See, e.g., New York v. Pullman Inc., 662 F.2d 910, 917 (2d Cir. 1981), cert. denied, 454 U.S. 1164 (1982).

### a. The Prior Dismissal of Lore's Discrimination Claims

Within the above framework, we reject the City's contention that the court was required to inform the jury that Lore's discrimination claims had been dismissed. That dismissal--even if it had been entirely correct, which it was not (see Part III.B. below)--would not be material to Lore's claims of retaliation. To establish a prima facie case of retaliation, an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action. See generally Kessler v. Westchester Department of Social Services, 461 F.3d 199, 205-06, 207-10 (2d Cir. 2006) ("Kessler"); Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d at 292. However, in order to recover for retaliation for having filed such a complaint, the plaintiff need not prove that her underlying complaint of discrimination had merit. See, e.g., Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1177-78 (2d Cir. 1996); Manoharan v. Columbia University College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988).

Of necessity, given the nature of the claims of retaliation, the fact that Lore had filed complaints of discrimination would be mentioned at trial in order to place her retaliation claims in context. And each side stretched to present that context in an advantageous light. (See, e.g., Part V below.) But throughout the trial, the court told the jurors that they were not to concern themselves with whether Lore's discrimination complaints had merit. The court began by so informing the

33

prospective jurors during voir dire, stating that Lore had filed two "claims of discrimination against the city police department," that "we are not getting into the merits of those claims because that's not at issue here," and that federal and state law forbid a public employer to retaliate against an employee for filing a claim of discrimination, "regardless of the merits of what you have filed." (Tr. 14.)

After jury selection, the court informed the jurors that there was no dispute that Lore had filed a claim with the EEOC alleging discriminatory conduct; and it stated that "the issue before you will not be whether or not she was discriminated against at all. The issue before you is after she filed those claims, was she retaliated against because she filed the claims. The merits of those claims that she filed are not before you." (Tr. 38 (emphases added).) And again, before the parties' opening statements, the court reiterated that Lore had filed complaints of discrimination but stated:

> I have instructed counsel, and I am instructing you that there will be no discussion about the results of her filing of the complaints. As I said, that's irrelevant to the issues in this case. You are here only for retaliation. The results are immaterial whether they are valid or invalid.

> We are not going to have any evidence about that. You are not to speculate. You are not to consider what was the results of her complaints.

(Id. at 47.)

The court thereafter also repeatedly admonished counsel in the presence of the jury, and reminded the jury, that the trial was not concerned with the merits of Lore's complaints of discrimination. For example, when defense counsel in his opening statement told the jury that Lore had not suffered sexual harassment, loss of rank, or loss of pay, the court promptly reminded him "not to get into that" (Tr. 80) and stated:

> THE COURT: Again, Mr. Smith, we are not talking about the merits of this claim.

> . . . [M]embers of the jury, the merits of her [discrimination] claim[s are] irrelevant. We are talking about retaliation.

(Id.) When Lore was questioned by her own attorney about her complaints of discrimination (see id. at 98), the court ruled that Lore was not to go into the details of her complaints; it allowed her to answer "to the extent that if she wants to say it was gender discrimination, yes or no. That's all." (Id. at 99; see also id. at 102 ("[Y]ou are getting close to the merits of those filings, and I am not going to allow it. We are not here to decide the merits of any of the grievances filed."); id. at 113 ("[W]e know she filed [a complaint] for gender discrimination. I told you we are not getting into the details because this is a retaliation cause of action that we are talking about.").) And in its final charge to the jury the court again instructed, "[t]he merits of plaintiff's complaints of gender discrimination are of no concern to you. Instead, your task is to determine whether plaintiff was unlawfully retaliated against for complaining of gender discrimination." (Tr. 1226 (emphasis added).) Given that the trial was focused on Lore's claims of retaliation, the court properly instructed that the merits of her claims of discrimination were of no proper concern to the jury.

To the extent that the City argues that such an instruction might have been needed to avoid jury confusion as to precisely what was at issue, we note that defendants must bear some responsibility for such confusion as may have occurred. Loose and inapposite language, conflating the areas of discrimination and retaliation, was repeatedly used by defense counsel, who, instead of referring to retaliation for complaints of discrimination, referred to "retaliation based upon gender" (e.g., id. at 78, 88) and "sexual retaliation" (e.g., Tr. 76, 77, 829, 830). And, disregarding the court's repeated admonitions not to get into the merits of Lore's discrimination complaints, defense counsel in his summation stated as follows:

> I think when we review this evidence together, you will conclude at the end of this case that there were no acts of discrimination and certainly no acts of retaliation against Sergeant Lore.

35

So where does it begin? Where does it begin? We frankly know it goes back to May of 1999 when Sergeant Lore then held the position of public information officer, and for reasons that you heard but reasons, frankly, that are not before you in this trial, she was transferred.

And frankly, as a result of that transfer out of that position, that everything starts and ends with Therese Lore that she has been discriminated against, that she has been retaliated against. Set aside for the moment that the mayor of the City of Syracuse or the chief's office has absolutely every right to transfer whatever employee they want.

For instance, if there are complaints about the public information officer, the public information officer gets in tantrums, temper tantrums, shouting fights, cussing fights with members of the media, I suggest to you that might be one good reason to transfer her out of her position as the public information officer.

(Tr. 1136-37 (emphases added).)

The court's instructions eliminating the merits of Lore's complaints of discrimination from consideration by the jury were clear and appropriate. And if the court had, as the City wishes, told the jury that Lore's discrimination claims had been dismissed, such an instruction--in light of the fact that the dismissal of some of those claims was erroneous (see Part III.B. below)--might well have entitled Lore to a new trial.

b. The Element of Causation

Nor do we see any unfairness in the court's instructions to the jury as to the element of causation. The court informed the jury that "plaintiff must prove there was a causal connection between her complaint of discrimination with the EEOC and a materially adverse employment action." (Tr. 1228.) The court instructed, in part, that

plaintiff must prove that her complaints of discrimination w[ere] a cause of the alleged acts of retaliation. You must determine whether the defendant under consideration acted with a retaliatory motive, or alternatively, whether they

36

acted for non-retaliatory, permissible reasons. You have heard at trial various explanations from the defendants for their actions. Your task now is to determine whether plaintiff has proven that the defendants more likely acted in retaliation than in accordance with their proffered reasons. . . . If you determine that plaintiff's complaints of discrimination and other events both served as motivating factors for the alleged acts of retaliation, you must find for the plaintiff against the defendant under consideration. On the other hand, if you find that plaintiff has not proven that her complaints of discrimination served as a motivating factor for the alleged acts of retaliation, you must find for the defendant under consideration.

(Tr. 1230-31.) The court thereafter elaborated on the issue of

proximate cause of plaintiff's damages. Should you find that the plaintiff has proven [that defendant violated Lore's First Amendment right to complain of gender discrimination], you must next determine whether plaintiff's injuries were caused by the defendants' alleged retaliatory actions. Plaintiff has the burden to prove that her injuries would not have occurred without defendants' retaliatory conduct. Therefore, if plaintiff's injuries would have occurred absent the alleged acts of retaliation, you must find for the defendant under consideration.

(Tr. 1232.) The court instructed that damages were appropriate only as necessary to compensate Lore for harm "she sustained as a direct result of the defendants' actions" (id. at 1236 (emphasis added)) and "as the direct result of any retaliation she may have suffered" (id. at 1237 (emphases added)). The Verdict Form itself asked whether Lore "sustain[ed] actual damages because of defendant City of Syracuse's acts of retaliation." (Verdict Form at 15 (emphases added).)

Considering the court's instructions as a whole, we see in them no basis for a new trial.

3. The Verdict Form

The City also contends that it is entitled to a new trial because the section of the Verdict Form with regard to the City posed compound questions. Thus, the first interrogatory called for a single "Yes" or "No" answer to the question whether the City "a) offer[ed] to forgo criminal and

37

administrative charges against plaintiff Therese Lore in exchange for her withdrawal of her complaints of discrimination; or b) suspend[ed] plaintiff Therese Lore for ten days and s[ought] a criminal investigation of her conduct." (Verdict Form at 14 (emphasis added).) Subsequent questions asked about knowledge, motivation, and the employment effect (materially adverse or not) of "either" of those acts, "(a. or b.)." (Id. at 14, 15.)

Decisions as to the format and language to be used in a special verdict form are committed to the trial court's discretion, see, e.g., Smith v. Lightning Bolt Productions, Inc., 861 F.2d 363, 370 (2d Cir. 1988), and there is no abuse of discretion if the verdict form, when read in conjunction with the instructions to the jury, clearly presents the material factual issues raised by the pleadings and evidence, see, e.g., Cutlass Productions, Inc. v. Bregman, 682 F.2d 323, 327 (2d Cir. 1982). A party that fails to object at trial to the substance or ambiguity of special verdict questions to be put to the jury waives its right to a new trial on that ground and has no right to object to such matters on appeal, see, e.g., United States Football League v. National Football League, 842 F.2d 1335, 1367 (2d Cir. 1988); Bohack Corp. v. Iowa Beef Processors, Inc., 715 F.2d 703, 710 n.8 (2d Cir. 1983), unless the error is fundamental, see generally Shade v. Housing Authority of New Haven, 251 F.3d 307, 312-13 (2d Cir. 2001). "An error is fundamental under this standard only if it is 'so serious and flagrant that it goes to the very integrity of the trial.'" Id. at 313 (quoting Modave v. Long Island Jewish Medical Center, 501 F.2d 1065, 1072 (2d Cir. 1974)).

Although the posing of compound questions is inappropriate because it normally will cause the jury's answers to be ambiguous, the City concedes that it did not object to the Verdict Form on this ground. (See City's Postargument Letter at 2.) The City states that it objected "to the entire verdict form" (id.); but in order to preserve an issue for appeal, an objection "must be sufficiently

38

specific to bring into focus the precise nature of the alleged error," Palmer v. Hoffman, 318 U.S. 109, 119 (1943). An objection "to the entire verdict form" does not suffice to alert the court to a specific error in a particular question.

Although the City also states that it had proposed its own set of interrogatories "which did not contain a compound question" (City's Postargument Letter at 2), its proposed questions could not have alerted the court to a need to require separate answers to disjunctive possibilities, for the City's proposed questions did not set out any possibilities separately; the City did not request separate findings as to whether it (a) offered to forgo criminal charges if Lore would withdraw her discrimination complaints, or (b) suspended her for refusing to do so and attempted to have her prosecuted. The City's proposed liability interrogatories--aside from inappropriate legal questions with regard to qualified immunity (see generally Part III.A.1. below)--asked simply whether a given defendant "intentionally retaliated against [Lore] for filing complaints of" gender "discrimination" and if so whether Lore was thereby injured. Thus, despite the fact that some of the individual defendants had testified that they did not engage in the conduct described by Lore--and on the basis of their own evidence moved, inappropriately, for judgment as a matter of law (see, e.g., Tr. 889, 1080-81, 1084)-- not one of the City's proposed questions asked the jury to make a finding as to whether Lore had proven that a given defendant had in fact performed a particular alleged retaliatory act.

It was well within the court's discretion not to adopt the City's proposed blunderbuss interrogatories; and the City's present objection to the compound questions in the interrogatories that were adopted is not preserved for review. Given that there was ample evidence upon which the jury could find that the City both (a) offered to forgo criminal and administrative charges against Lore if she would withdraw her complaints of discrimination and (b) suspended her for 10 days and attempted

39

to subject her to criminal investigation after she refused, i.e., ample evidence to permit the jury to answer the initial question affirmatively had it been phrased as a conjunct rather than a disjunct, we cannot conclude that the compound questions in this case warrant a new trial.

### III. LORE'S CROSS-APPEAL WITH RESPECT TO ISSUES OF LIABILITY

Lore, in her cross-appeal, argues principally (A) that the court should have determined that Guy was not entitled to qualified immunity, rather than submitting that ultimate issue to the jury and dismissing her claims against Guy on the basis of the jury's determination, and (B) that the court erred in granting summary judgment dismissing her principal gender discrimination claims based on her removal from the PIO position. Lore's contention that, on the basis of the jury's factual findings against Guy, the district court should have entered judgment in her favor for the $250,000 in injuries Guy was found to have caused, in addition to the $250,000 the judgment awarded against the City, is discussed in Part IV below.

Lore's additional contentions with regard to issues of liability are principally that the district court erred in summarily dismissing her claims against Falge; that she is entitled to a new trial on her retaliation claims against Boyle and Kerwin on the ground that the court improperly excluded evidence relevant to those claims; and that she was entitled to a default judgment against all of the defendants for their noncompliance with discovery orders. Those contentions, along with the argument that Lore was entitled to an award of higher attorneys' fees, are discussed in Part III.C. below.

40

For the reasons set out in Parts III.A. and B. below, we find merit in some aspects of Lore's contentions with respect to the liability of Guy, and we agree that the district court erred in granting summary judgment dismissing her principal gender discrimination claims under the HRL on the basis that Lore had suffered no materially adverse employment action. However, for the reasons stated in Part V below, we only conditionally vacate the dismissal of Lore's HRL discrimination claims.

A. Lore's Contentions as to Guy and the City

Over Lore's objection, the district court instructed the jury on federal law principles governing public officials' entitlement to qualified immunity with respect to Lore's § 1983 claims, and the Verdict Form included a question to be answered, if the jury found that Guy retaliated against Lore, as to whether Guy was entitled to qualified immunity. Lore contends that the ultimate question of Guy's entitlement to qualified immunity was a legal question for the court, not a question for the jury, and that the court should have ruled, based on the jury's factual findings, that Guy was not entitled to immunity. We agree in part. Once any material factual questions had been answered by the jury, the ultimate matter of Guy's entitlement to qualified immunity should have been determined by the court. Bearing in mind that the claims submitted to the jury against Guy were both those asserted under § 1983 for violation of Lore's First Amendment right to file grievances and complain of discrimination and those asserted under the HRL, we conclude that the court should have determined that Guy (a) was entitled to qualified immunity on the § 1983 claim but (b) did not establish his state-law entitlement to immunity for violation of the HRL.

41

1. Submission of Qualified Immunity Issues to the Jury

The federal-law principles governing entitlement to qualified immunity with respect to alleged violations of the Constitution are well established. Qualified immunity protects public officials performing discretionary functions from personal liability in a civil suit for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, Harlow, 457 U.S., at 819, assessed in light of the legal rules that were 'clearly established' at the time it was taken, id., at 818." Anderson v. Creighton, 483 U.S. 635, 639 (1987).

> The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See Wilson v. Layne, 526 U.S. 603, 615 (1999) ("[A]s we explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").

Saucier v. Katz, 533 U.S. 194, 202 (2001) (emphasis added). Thus, "[w]hether a defendant officer's conduct was objectively reasonable is a mixed question of law and fact." Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007). "If there are unresolved factual issues which prevent an early disposition of the defense, the jury should decide these issues on special interrogatories." Warren v. Dwyer, 906 F.2d 70, 76 (2d Cir.), cert. denied, 498 U.S. 967 (1990); see, e.g., Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010); Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004); Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, 513 U.S. 1076 (1995).

Here, questions as to what situation confronted Guy, what acts he performed, and his motivation in performing those acts were questions of fact; they were to be--and were--answered by

42

the factfinder. In light of those factual findings, the question of whether it would be clear to a reasonable public official, engaging in that conduct in that situation, that his conduct was unlawful was a question of law. We conclude that although the district court properly put the fact questions to the jury, it erred in having the jury decide the ultimate legal question, in light of the facts established, of whether Guy, in his personal capacity, was entitled to qualified immunity. That legal question should have been answered by the court.

### 2. Guy's Entitlement to Qualified Immunity

Lore contends that the court should have ruled that Guy was not entitled to qualified immunity. We disagree with respect to Lore's retaliation claim based on federal law, i.e., her claim under § 1983 that Guy retaliated against her in violation of her First Amendment right to file grievances and complaints of discrimination; but we agree with respect to her claim under the HRL.

### a. Immunity with Respect to Lore's § 1983 Claim

As indicated in Part III.A.1. above, federal law accords a public official qualified immunity from personal liability in a civil suit for damages if his performance of a discretionary function did not violate clearly established federal statutory or constitutional rights of which a reasonable person in his position would have known. In order to prevail on her § 1983 retaliation claim, Lore was required to prove (and the jury found that she had proven), inter alia, that because of her exercise of her First Amendment rights, she suffered a materially adverse action. See, e.g., Cox v. Warwick Valley Central School District, 654 F.3d 267, 272 (2d Cir. 2011).

43

Prior to 2006, our decisions in cases involving First Amendment retaliation claims brought by public employees against their employers under § 1983 had not made clear that the adverse-action element of such a claim need not involve adverse action related to the plaintiff's employment. Some of our opinions did not refer to the need for an employment connection, perhaps because there was no dispute that there in fact was such a connection, see, e.g., Locurto v. Safir, 264 F.3d 154, 158, 166 (2d Cir. 2001) (termination of employment); Heil v. Santoro, 147 F.3d 103, 105, 109 (2d Cir. 1998) (10-day suspension without pay). In 1999, however, i.e., a year before Guy's retaliation against Lore through his comments to the media, we had held that a plaintiff employee complaining of retaliation by his employer for exercise of his First Amendment rights--similarly to one complaining of retaliation in violation of Title VII, see generally Kessler, 461 F.3d at 206-07 (discussing cases)--was required to show an adverse action that was related to employment, see Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). In Morris, which involved claims under § 1983, not Title VII, we affirmed the dismissal of one of the claims, stating that "Morris does not allege that the transfer here involved any change in job description, days and hours, duties, benefits, or opportunity for promotion. It follows that the transfer was not an adverse employment action." 196 F.3d at 113.

In 2006, the Supreme Court in Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) ("Burlington"), ruled that even on a retaliation claim under Title VII, the materially adverse action that must be proven need not be squarely tied to the terms or conditions of the plaintiff's employment. See id. at 67 ("The scope of the [Title VII] antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."); id. at 70. The Burlington Court reasoned that "[a]n employer can effectively retaliate against an employee by taking

44

actions not directly related to his employment or by causing him harm outside the workplace," such as by "fil[ing] false criminal charges against [a] former employee who complained about discrimination." Id. at 63-64 (emphasis in original). "A provision limited to employment-related actions would not deter the many forms that effective retaliation can take." Id. at 64. Thus, the Court ruled that the proper interpretation of the adverse action requirement in Title VII is that

> a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Id. at 68 (internal quotation marks omitted). The Court stated, "Our holding today makes clear that the jury was not required to find that the challenged actions were related to the terms or conditions of employment." Id. at 70. If the adverse-action element of a Title VII retaliation action can be satisfied by an action causing the employee harm outside the workplace, a fortiori an act in retaliation for the employee's exercise of a constitutional right need not be tied to harm in the workplace.

In the present case, the district court's jury charge--which apparently inadvertently imposed on Lore the unduly high burden of proving the adverse-action element "beyond a preponderance"--straddled the pre- and post-2006 analyses of the controlling principle:

> To constitute a materially adverse employment action, plaintiff must prove beyond a preponderance of the evidence that she was subject to an employment action which would discourage a reasonable employee from coming forward with a complaint of discrimination. In other words, plaintiff must prove that the alleged acts of retaliation would cause a reasonable employee to hesitate when deciding whether to complain of discrimination at the workplace. As with the other elements, you must find for the defendant on each claim, if any, for which you determine the alleged act of retaliation was not materially adverse.

(Tr. 1229-30 (emphases added).)

45

As the jury could reasonably conclude that a public comment by the municipality's top lawyer implying or "confirm[ing]" (Tr. 905) that Lore, a police officer, had stolen fellow officers' paychecks, though not affecting the terms or conditions of Lore's employment, might well have dissuaded a reasonable police officer from making a complaint of discrimination, Guy was properly found to have unlawfully retaliated against Lore. But our express ruling in Morris v. Lindau in 1999 impedes the conclusion that the principle that the adverse-action element could be satisfied by harmful effects outside the workplace would have been clear to a reasonable corporation counsel at the time of Guy's comments to the media in 2000. And as we have not been pointed to any trial evidence from which the jury could reasonably have inferred that those comments caused a material change in Lore's employment status or the terms and conditions of her employment, we must conclude that Guy was entitled to qualified immunity on Lore's § 1983 claim against him for his retaliatory comments to the media in 2000.

We note that the City contends that if Guy is entitled to qualified immunity, the City is immune from responsibility for his actions. We reject this contention because qualified immunity is a defense only on a claim asserted against an individual in his personal capacity. A suit against an individual in his personal capacity is not a suit against the governmental entity. See, e.g., Kentucky v. Graham, 473 U.S. 159, 167 (1985). A claim asserted against an individual in his official capacity, on the other hand, is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," Monell v. Department of Social Services, 436 U.S. 658, 691 n.55 (1978). But "municipalities have no immunity from damages for liability flowing from their constitutional violations." Owen v. City of Independence, 445 U.S. 622, 657

46

(1980); see, e.g., Morris v. Lindau, 196 F.3d at 111 ("municipalities have no immunity defense, either qualified or absolute, in a suit under § 1983"). Thus, with respect to an official-capacity claim, qualified immunity is simply not a defense. See, e.g., Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. at 167. However, the City is not liable for Guy's violation of Lore's constitutional rights for the reasons discussed in Part III.A.3. below.

### b. Immunity With Respect to Lore's HRL Claim

We reach a different conclusion with respect to the matter of qualified immunity for Guy on Lore's claim under the HRL. While the analyses of claims of employment discrimination or retaliation are the same under Title VII and the HRL, see, e.g., Farias v. Instructional Systems, Inc., 259 F.3d 91, 98 (2d Cir. 2001); Raskin v. Wyatt Co., 125 F.3d 55, 60 (2d Cir. 1997), the principles of New York law governing the availability of qualified immunity for violations of state law differ somewhat from the above federal principles applicable to violations of federal law.

Preliminarily, we note that Guy and the City, citing only Mon v. City of New York, 78 N.Y.2d 309, 313, 574 N.Y.S.2d 529, 532 (1991), and Barrett v. United States, 798 F.2d 565, 572-73 (2d Cir. 1986), contend that Guy is entitled not just to qualified immunity but even to "absolute immunity for his comments to the press" on the ground "that Guy's comments were made in his capacity as Corporation Counsel and were made in defense of the City of Syracuse in pending civil litigation." (Defendants' reply brief on appeal at 35.) We are unpersuaded.

New York law does recognize absolute immunity with respect to the performance of discretionary functions that are judicial, quasi-judicial, prosecutorial, or quasi-prosecutorial, see, e.g., Arteaga v. State of New York, 72 N.Y.2d 212, 216, 532 N.Y.S.2d 57, 59 (1988); Della Pietra v. State

47

of New York, 71 N.Y.2d 792, 796, 530 N.Y.S.2d 510, 511-13 (1988) ("Della Pietra"); Tarter v. State of New York, 68 N.Y.2d 511, 518, 510 N.Y.S.2d 528, 531 (1986); and perhaps it would deem an attorney who is defending a governmental entity in ongoing litigation to be entitled to immunity similar to that of a prosecutor, cf. Barrett v. United States, 798 F.2d at 569-70, 572-73 (affirming, under federal law, the absolute-immunity dismissal of a defense attorney for the State of New York who, "on behalf of the State of New York during the course of and in connection with ongoing litigation," had withheld certain information from the plaintiff). But here we focus principally on Guy's first set of comments to the media, for defendants did not seek separate questions as to which of Guy's sets of comments caused Lore injury, and we think it highly likely that the jury viewed the implication that a police officer was a thief, stealing from her fellow policemen, as inherently far more damaging to the officer's reputation and prospects for occupational advancement, and far more upsetting, than the statements that she simply was not doing her job well. Guy's first comments to the press--resulting in the November 2000 Post-Standard article erroneously stating that Lore had taken other officers' "checks" and implying that she had stolen them--were made before there was any pending litigation, and his comments had no discernable judicial character. Indeed, in testifying at trial, Guy characterized his November statements to the press as merely responding to a freedom-of-information request. (See Tr. 903, 905-07.)

Further, the authorities cited by Guy and the City are inapposite; neither Barrett v. United States nor Mon v. City of New York involved statements by a government attorney to the media. And the latter, an action brought by a plaintiff who was shot by a policeman, did not involve either an attorney defendant or any question of individual immunity. Rather, Mon dealt with the question of whether a municipality "ha[d] governmental immunity from liability for negligence in

48

hiring."  78 N.Y.2d at 311, 574 N.Y.S.2d at 530.  Guy has not shown any entitlement to absolute immunity.

Nor can we conclude that New York law entitled Guy to qualified immunity.  In contrast to the federal standard, which is "objectively reasonable reliance on existing law," Kentucky v. Graham, 473 U.S. at 167; see, e.g., Harlow, 457 U.S. at 818, the New York standard for entitlement to qualified immunity has both objective and subjective components.  The objective component distinguishes between official acts that are "discretionary" and those that are "ministerial" (although the line between the two categories is not always clear, see, e.g., Tangocross v. Tulevech, 61 N.Y.2d 34, 40-41, 471 N.Y.S.2d 73, 76-77 (1983)), making such immunity available only with respect to those that are discretionary, see, e.g., Mon v. City of New York, 78 N.Y.2d at 313, 574 N.Y.S.2d at 531-32.  The subjective component makes qualified immunity entirely unavailable if there are "undisturbed findings of bad faith," Della Pietra, 71 N.Y.2d at 795, 530 N.Y.S.2d at 511; see also Jules Rabin Associates, Inc. v. Landon, 38 N.Y.2d at 828, 382 N.Y.S.2d at 45 ("affirmative defense of qualified privilege may be overcome by malice established by showing recklessness with regard to the truth or falsity of otherwise defamatory statements").

We need not decide whether Guy's initial statements to the media were discretionary or ministerial, however, for even if they were more than ministerial, Guy plainly cannot be said to have met his burden of proof on the subjective component of the New York standard, i.e., the burden of showing that his statements to the media were not made in bad faith.  To begin with, we note that although defendants were insistent that the district court should instruct the jury to make the ultimate determinations (if any were needed) with respect to qualified immunity, defendants' proposed instructions to the jury--which included one relating to qualified immunity on claims under "§1983"--

49

contained no proposed instruction with respect to immunity on claims under the HRL, and they did not mention Guy's burden of proving lack of bad faith in order to prevail on that defense. Similarly, defendants' proposed interrogatories to the jury included no question on the issue of good or bad faith.

Moreover, Guy's testimony at trial fell well short of a meaningful attempt to show lack of bad faith. Guy testified that he received a call from a reporter seeking confirmation that an SPD officer had been suspended for copying payroll or personnel records (see Tr. 904-05), that he had spoken to Falge, who informed him that an employee had been suspended for copying paycheck "stubs" (id. at 907), and that Guy informed the reporter that her "information . . . was accurate" (id. at 907, 908). But Guy did not testify to exactly what information the reporter told him she had. The ensuing article referred to "check[s]" rather than pay stubs; it stated that Lore was suspended for "taking" them, easily lending itself to the inference that she had stolen them; and every statement in the November article was expressly attributed to Guy. Guy did not testify that the article in any way went beyond what he had "confirm[ed]" to the reporter. And it may not have been lost on the jury that Guy's failure to attempt to distance himself from the article's implication that Lore had stolen checks was entirely consistent with his attorney's arguments at trial that Lore copied other officers' "checks" (e.g., Tr. 82, 83, 1141, 1143); that Lore engaged in a "check scheme" (id. at 82, 83); that Lore "took" her fellow "sergeants' . . . paycheck[s]" (id. at 84; see id. at 1142); that Lore went to the ABC Office to "take payroll checks" (id. at 1141); and that at the September hearing Lore "show[ed] that she stole the checks" (id. at 83). The jury, which evidently credited Lore's testimony that she had not taken checks, had not stolen anything, and had only copied pay stubs, was easily entitled to infer that Guy was responsible for the November article's indication that Lore had stolen her fellow officers' paychecks.

50

Ironically, the jury, while being inappropriately asked to determine the legal question with regard to qualified immunity on the § 1983 claim, was not asked to make a factual finding as to whether Guy had acted in good faith, a fact that was essential to his state-law defense of qualified immunity on the HRL claim. Not being given a question on that issue, and not being instructed on the state-law qualified-immunity issue of bad faith, the jury made no finding as to whether Guy had met his burden of proving that he did not act in bad faith. In circumstances in which a jury has been asked to return a special verdict in the form of answers to fact questions, see Fed. R. Civ. P. 49(a), but, without timely objection, has not been given a question on a material fact, that question is to be answered by the court, see, e.g., Cullen v. Margiotta, 811 F.2d 698, 730-31 (2d Cir.), cert. denied, 483 U.S. 1021 (1987), overruled on other grounds by Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143 (1987). In many cases, the court in answering an omitted question will theoretically be free to make a finding favoring either side. However, given the parties' Seventh Amendment rights to have factual issues decided by a jury, "the jury's verdict on the common factual issues precludes a contrary finding of fact by the court . . . ." Wade v. Orange County Sheriff's Office, 844 F.2d 951, 954 (2d Cir. 1988); see also LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 432 (2d Cir. 1995) (court cannot, given principles of collateral estoppel, make its own findings that are inconsistent with the findings of the jury).

Here, the jury, having been instructed that Lore was required to prove each element of her claims against each defendant by a preponderance of the evidence (see, e.g., Tr. 1224-25), found expressly that Lore had proven that Guy made negative comments about her to news reporters, that when he made those comments he knew she had made complaints of discrimination, and that her complaints of discrimination were "a motivating factor for defendant Corporation Counsel Rick Guy's

51

acts of retaliation" (Verdict Form at 5-6). Given the jury's finding, by a preponderance of the evidence, that Guy was motivated to retaliate against Lore because of her protected activity in making complaints of discrimination, the court would not have been free to make a finding that Guy had proven by a preponderance of the evidence that he had not acted in bad faith.

Accordingly, Guy did not establish his entitlement to qualified immunity with respect to Lore's claim that he retaliated against her in violation of the HRL. We agree with Lore that the judgment should not have dismissed that claim.

### 3. Liability of the City for the Actions of Guy

Lore contends that the jury's findings that Guy unlawfully retaliated against her should be imputed to the City and that the district court should have entered judgment in her favor not only requiring the City to pay her $250,000 in damages on account of the jury's findings against the City itself, but also requiring the City and Guy to pay her an additional $250,000 in damages on account of the jury's findings as to the conduct of Guy. Lore's imputation contention has merit only with respect to her claim under the HRL; and we cannot conclude that the imputation of HRL liability to the City for Guy's conduct would justify an increase in the award of damages.

The jury's findings against Guy on Lore's § 1983 claim cannot properly be used to impute liability for his acts to the City. Although Guy was sued in both his personal and official capacities, a suit against an official in his official capacity

> is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

52

Kentucky v. Graham, 473 U.S. at 166 (emphasis in original). A § 1983 claim against a municipality or against an official sued in his official capacity, however, cannot be sustained unless the plaintiff shows that the violation of her federal rights was the result of a municipal custom or policy. See, e.g., Monell, 436 U.S. at 694.

> [Although] to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right[,] . . . . [m]ore is required in an official-capacity action, . . . for a governmental entity is liable under § 1983 only when the entity itself is a "'moving force'" behind the deprivation[;] . . . thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law.

Kentucky v. Graham, 473 U.S. at 166 (first emphasis in original; second and third emphases added).

The district court dismissed Lore's § 1983 claim against the City in Lore I, see 583 F.Supp.2d at 381 n.7, and no substantial evidence was introduced to show that the acts of Guy or other individual defendants were performed pursuant to a custom or policy of the City. Thus, the claims against individual defendants in their official capacities could not be sustained. Guy could be found liable only in his personal capacity, and such liability--assuming he were not entitled to qualified immunity on the § 1983 claim--could not result in a judgment against the City. "Only in an official-capacity action is a plaintiff who prevails entitled to look for relief, both on the merits and for fees, to the governmental entity." Kentucky v. Graham, 473 U.S. at 171.

The story begins differently with respect to Lore's claim under the HRL, however. No municipal custom or policy need be proven to establish the liability of the City for violation of that state law, for "[m]unicipalities surrendered their common-law tort immunity for the misfeasance of their officers and employees long ago," Tango v. Tulevech, 61 N.Y.2d at 40, 459 N.E.2d 182 at 76. Guy's violation of Lore's rights under the HRL may properly be imputed to the City. Indeed, the court

advised the jury that if it found any of the individual defendants (other than the long-retired Lemm) to have retaliated against Lore in violation of the HRL, "then the City is responsible." (Tr. 37; see also id. at 1244 ("If you find against any individuals, that will also be a finding against the City of Syracuse.").) With respect to Lore's claims asserted under the HRL, those instructions were correct. Accordingly, to the extent that the jury found that Guy violated the HRL in making negative retaliatory comments about Lore to the press, the City is liable for that violation. The consequences of the City's responsibility for the acts of Guy in this case are discussed in Part IV below.

B.      Lore's Challenge to Summary Judgment Dismissing Her HRL Discrimination Claims

The principal employment action that Lore alleged constituted gender discrimination was her removal as SPD spokesman in mid-1999. There appears to be no dispute that Lore was removed from the PIO position by then-chief Foody upon the orders of then-Mayor Bernardi. In support of her contention that her removal was motivated by gender discrimination, Lore testified in deposition that she was replaced by a male and that Foody later told her, "in sum and substance," that Mayor Bernardi told Foody that Lore had too much influence and that "a woman should be seen and not heard." (Deposition of Therese Lore ("Lore Dep."), at 79-80.)

On the summary judgment motion by the City and most of the individual defendants, the district court dismissed Lore's Title VII and HRL discrimination claims on various grounds. See Lore I, 583 F.Supp.2d at 360-66, 376-80, 388. Because Title VII does not impose liability on individuals, see, e.g., Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003); Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000); Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995) ("Tomka"), abrogated on other grounds by Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998),

54

the court dismissed all of Lore's Title VII claims against the individual defendants. See Lore I, 583 F.Supp.2d at 359. Because under the relevant provision of federal law Lore was required to file her EEOC complaint no more than 300 days after the allegedly discriminatory employment practice, see 42 U.S.C. § 2000e-5(e)(1), the court dismissed all of her Title VII claims as to events prior to September 19, 1999, on the ground that they were time-barred. See Lore I, 583 F.Supp.2d at 360.

Under the HRL, in contrast, liability for employment discrimination may be imposed on individuals, see, e.g., Mandell v. County of Suffolk, 316 F.3d at 377; Tomka, 66 F.3d at 1317, and the limitations period for bringing an HRL claim is not 300 days but rather is three years, see, e.g., Bonner v. Guccione, 178 F.3d 581, 584 (2d Cir. 1999). Accordingly, the court concluded that Lore's gender discrimination claims that her removal from the PIO position and her transfers to Technical Operations and Patrol units violated the HRL were cognizable against the individual defendants and were timely. See Lore I, 583 F.Supp.2d at 377.

Because discrimination claims under the HRL are evaluated using the same analytical framework used in Title VII actions, the district court considered Lore's HRL discrimination claims within the framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). To show a prima facie case within that framework, a plaintiff must proffer evidence (1) that she is a member of a protected class, (2) that she is qualified for the position at issue, (3) that she was subject to a materially adverse employment action, and (4) that the circumstances give rise to an inference of invidious discrimination. See id. at 802 & n.13. The district court concluded that Lore could not meet the third prong of this test:

> With respect to the May 10, 1999, removal of plaintiff from her position as Public Information Officer, plaintiff fails to establish how this removal constituted an adverse employment action under the applicable case law. It is undisputed that plaintiff's salary did not change as a result of her

55

removal. Although plaintiff could nevertheless demonstrate an adverse employment action by showing a substantial reduction in material responsibilities, . . . plaintiff does not submit any evidence of a reduction in responsibilities following the May 10, 1999, transfer. Much to the contrary, plaintiff was given the opportunity in her deposition to explain whether she had "fewer responsibilities" after her removal from the Public Information Officer position, but plaintiff expressly declined to characterize her responsibilities as "fewer" and instead described her new responsibilities as "different."

Lore I, 583 F.Supp.2d at 377 (quoting Lore Dep. 78-79 (emphases ours)). Although noting that the fact that Lore was given "different, rather than fewer, responsibilities does not remove the possibility that the alleged discriminatory act was sufficiently adverse, . . . so long as a reasonable person would believe their working conditions were worsened by the change in responsibilities," Lore I, 583 F.Supp.2d at 377-78, the court concluded that Lore had not shown that a reasonable person would have that belief. It dismissed Lore's HRL claims of discrimination based on her removal from the PIO position, stating that

plaintiff admits in her deposition that she received the same benefits, salary, and work schedule following the May 10, 1999, transfer . . . and fails to direct the Court's attention to any evidence of why a reasonable person, let alone herself, believed her employment conditions had been worsened by the May 10, 1999, transfer.

Id. at 378.

On appeal, Lore contends that the district court erred in concluding as a matter of law that her removal from the PIO position was not a materially adverse employment action. We agree. "[T]he protections provided by Title VII are not limited to instances of discrimination in pecuniary emoluments." De La Cruz v. New York City Human Resources Administration, 82 F.3d 16, 21 (2d Cir. 1996) (internal quotation marks omitted). The transfer of an employee from an "'elite'" position to one that is "less prestigious . . . with little opportunity for professional growth" is sufficient to

56

permit a jury to infer that the transfer was a materially adverse employment action. Id.; see, e.g., Burlington, 548 U.S. at 71 ("a jury could reasonably conclude" that a reassignment from a position carrying "an indication of prestige" to one imposing "duties [that] were by all accounts more arduous and dirtier" "would have been materially adverse to a reasonable employee" (internal quotation marks omitted)); Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008) (evidence of a "transfer [that] did not affect [the plaintiff's] wages or benefits, [but] resulted in a 'less distinguished title' and 'significantly diminished material responsibilities,'" is "sufficient evidence for the jury to conclude" that the transfer "constituted an adverse employment action"); Patrolmen's Benevolent Association v. City of New York, 310 F.3d 43, 51 (2d Cir.) ("A lateral transfer that does not result in a reduction in pay or benefits may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiff's employment in a materially negative way."), cert. denied, 538 U.S. 1032 (2002); Rodriguez v. Board of Education, 620 F.2d 362, 366 (2d Cir. 1980) (transfer of art teacher from junior high school to elementary school held to be an adverse employment action).

In the present case, in the PIO position, Lore was assigned to the office of the chief of police, dealt with the media, and was the spokesman for the Department. When she was removed from that position, her duties for several weeks entailed merely doing "odds and ends in the chief's office" (Lore Dep. 78); she was then reassigned to Technical Operations, see Lore I, 583 F.Supp.2d at 356. Shortly thereafter, she was again reassigned, this time to supervise the uniformed patrol units, see id.; and in little more than half a year, she herself was required to wear a uniform while serving in a community relations unit in which none of the male sergeants was required to wear a uniform, see id. at 361. We conclude that a rational juror could find that, even though Lore's rank and salary were not reduced, a reasonable police officer could easily view the change from the position of public

57

information officer in the office of the chief of police, to that of general factotum in that office and thence to equipment, patrol, and uniformed positions, as materially adverse changes. Accordingly, Lore's HRL claims for gender discrimination based on her removal from the PIO position should not have been summarily dismissed on the ground that she failed to proffer sufficient proof of a materially adverse employment action.

However, Lore has not argued on appeal that any individual defendant other than Bernardi was involved in the decision to remove her as PIO. In her deposition, Lore laid her removal from the PIO position squarely at the door of Bernardi (see Lore Dep. 76), and she has not called to our attention any proffer in the district court to show that any other individual was involved in her removal from that position. Thus, with respect to that removal, we see no basis for vacating the summary dismissals of any defendants other than Bernardi and the City. As to those two defendants, we will conditionally vacate the dismissal of Lore's HRL claims of gender discrimination in her removal from the PIO position; and we will give Lore the option to pursue those claims in accordance with the conditions set out in Part V below.

C. Lore's Other Contentions

Lore's other contentions, aside from her contention that she should be awarded an additional $250,000 in damages on the basis of the jury's findings against Guy, do not require extended discussion. She contends principally that the district court erred in summarily dismissing her claims against Falge and that she is entitled to a new trial on her retaliation claims against Boyle and Kerwin on the ground that the court improperly excluded evidence relevant to those claims. She also contends that the district court should have entered a default judgment against all of the

58

defendants for noncompliance with discovery orders. Finally, she contends that she was entitled to attorneys' fees calculated at an hourly rate higher than $210. We are unpersuaded.

1. Falge

Lore argues that the district court's granting of summary judgment dismissing her claims against Falge "deprived [her] of the opportunity to recover punitive damages." (Lore's brief on appeal at 39.) Her one-sentence explanation as to the basis for this challenge states simply that "the District Court's improper and super technical construction of Plaintiff's complaint (A-3616-3617) was error." (Id.) This argument fails to meet the requirement of the Federal Rules of Appellate Procedure that an appellant's brief on appeal must contain not only the party's contentions, but also "the reasons for them, with citations to the authorities," Fed. R. App. P. 28(a)(9)(A); see id. Rule 28.1(c)(2) (principal brief of appellee-cross-appellant "must comply with Rule 28(a), except that the brief need not include a statement of the case or a statement of the facts"). We decline to address Lore's unenlightening challenge to the dismissal of Falge.

2. Boyle

The jury found that Lore had not proven her retaliation claims against Boyle because she did not show that, at the time he barred her from the ABC Office and insisted that her future informational requests be in the form of memoranda, he knew of her complaints of discrimination. Lore contends that she is entitled to a new trial of her claims against Boyle because the district court refused to allow her to introduce a document--which she characterizes as "direct evidence" that Boyle banned Lore from the ABC Office as retaliation for her complaints of discrimination (Lore's brief on

appeal at 36)--to show that he had that knowledge. This contention and characterization are meritless.

Lore conceded at trial that Boyle issued the instructions barring Lore from the ABC Office and imposing the written-memorandum requirement on July 14, 2000. (See Tr. 1031-32.) The document that Lore claims was wrongly excluded--an interoffice memorandum comparing the overtime assignments given to Lore and others--was dated July 26, 2000. The document states nothing about the Boyle's knowledge as to Lore's filing of complaints of discrimination and does not indicate when Boyle requested the information provided. As such the document was not competent to fill the gap in Lore's proof, and it was well within the trial court's discretion to exclude it.

3. Kerwin

The jury found Lore's claims against Kerwin unproven because, although he knew of Lore's complaints of discrimination, Lore had not proven that his conduct was motivated by them. Lore contends that she is entitled to a new trial of her retaliation claims against Kerwin on two grounds. First she argues that "the credible evidence received during trial does not support the jury's finding that Defendant Michael Kerwin was not motivated by Sgt. Lore's EEOC charge when he attempted to read Sgt. Lore her Miranda warnings over the phone." (Lore's brief on appeal at 36; see id. at 36-37 ("The jury's finding that . . . Kerwin . . . was not [so] motivated . . . lacks a sufficient basis in the record to support the jury's verdict.").) Second, she argues that the district court abused its discretion in refusing to allow her to call as a witness SPD officer Katherine Lee, who had sued Kerwin for retaliation (see Lore's brief on appeal at 37-39). We reject these arguments.

In connection with her contention that the jury's finding in favor of Kerwin on the motivation issue was unsupported by the evidence, Lore argues that she "satisfied her burden in

60

showing that Kerwin knew about her EEOC complaint and took an adverse action against her." (Id. at 37.) This argument misperceives, inter alia, the elements of a retaliation claim and the allocation of the burden of proof. As the claimant, Lore had the burden of proving not only that the defendant in question had knowledge of her complaints of discrimination and took materially adverse action against her, but also that that action was motivated by her complaints of discrimination. (See Part II.B.2.b. above.) The jury found, apparently based on its assessments of the credibility of the witnesses, that Lore did not meet her burden of proving that Kerwin had a retaliatory motivation. Lore's contention that the jury should have disbelieved Kerwin's testimony or weighed the evidence differently provides no basis for undoing the verdict.

Lore also contends that the testimony of Lee "would have provided additional evidence that Kerwin's actions were motivated by an intent to retaliate on account of Sgt. Lore's complaints of discrimination" (Lore's brief on appeal at 38). Even a sound proffer in support of such a contention would not be dispositive, for the court may exclude even evidence that is relevant "if its probative value is substantially outweighed by" the danger of, inter alia, unfair prejudice, or confusion of the issues, or misleading the jury, or wasting time. Fed. R. Evid. 403. The court "[i]s not required to allow the trial to be diverted into an inquiry into an entirely different incident involving to a significant extent different people, places and events." Barrett v. Orange County Human Rights Commission, 194 F.3d 341, 347 (2d Cir. 1999). A decision to exclude evidence following a Rule 403 balancing analysis is reviewable only for abuse of discretion. See, e.g., Barrett, 194 F.3d at 347; Perry, 115 F.3d at 150.

Here, Judge Hurd--who was familiar with Lee's case, as he was the judge to whom it was assigned--declined to allow Lee, who had filed her EEOC claim in 2003, to testify in Lore's case

61

"under the limited issues that are before this Court regarding the allegations of retaliation back in the year 2000" (Tr. 542; see also id. at 25-27). In support of her contention that this was an abuse of discretion, Lore submits documents or arguments that are of doubtful utility or reliability.

First, in her main brief on appeal, she cites an affirmation by Lee describing "testimony [that] would have been elicited from [Lee]" (Lore's brief on appeal at 38). However, that affirmation--which is dated June 16, 2009, nearly three weeks after the end of Lore's trial, and hence was not before the district court at the time it barred Lee from testifying--states that Lee is "aware" that "Kerwin has made statements and committed acts which reflect a bias against me and other women who filed complaints of discrimination" (Affirmation of Katherine J. Lee dated June 16, 2009 ¶ 4); the affirmation does not mention Lore. Nor does it specify when the events it describes took place, except to say that one incident occurred in April 2005 (see id. ¶ 5). We cannot conclude that Lore should have a new trial based on a document created after trial, citing experiences of Lee that apparently occurred several years later than the events at issue here.

Second, Lore states that she and Lee were "women [who had] filed complaints of gender discrimination and both were subjected to retaliatory **conduct** by Defendant Kerwin" (Lore's reply brief on appeal at 14 (emphasis in original)); that "the Lee action was tried in March[] 2010 and resulted in a favorable verdict for Officer Lee" (id.); and that "Judge Hurd sustained the verdict on the basis that the evidence revealed decision-makers, including Defendant Kerwin, retaliated against [Lee] for opposing discrimination. See Lee v. City of Syracuse, et al., N.D.N.Y., 5:03-CV-1329, Dkt. No. 209" (Lore's reply brief on appeal at 14). There is no question that both Lore and Lee filed complaints against Kerwin containing discrimination and retaliation allegations. However, Lore's statement that the Lee action "resulted in a favorable verdict for Officer Lee" omits the facts that that

favorable verdict was only against the City, see Lee v. City of Syracuse, No. 5:03-CV-1329 (N.D.N.Y. March 23, 2010) (Verdict Form), and that all of Lee's claims against Kerwin had in fact been dismissed in 2009, see Lee v. City of Syracuse, 603 F.Supp.2d 417, 450 (N.D.N.Y. 2009). Further, the document cited by Lore in support of the statement that Judge Hurd upheld the judgment in favor of Lee on the basis that Kerwin had retaliated against Lee--"Dkt. No. 209"--turns out to be a transcript of an argument before the district court in which Kerwin's name is nowhere mentioned.

We see no basis for reversal in the court's exclusion of the testimony of Lee.

4. Request for Discovery Sanctions

Lore contends that the district court erred in refusing to impose discovery sanctions on defendants for what she calls "**REPEATED, MULTIPLE AND FLAGRANT ABUSES OF THE COURT'S DISCOVERY ORDERS**."  (Lore's brief on appeal at 44; see id. at 44-53.)  She states that "[her] attorney's affirmation filed with the District Court sets forth in detail the gross and repeated discovery violations of these Defendants."  (Id. at 44.)  However, she provides neither the date of that affirmation nor a record citation for where it can be found.

We assume that the affirmation referred to is the Affirmation of A.J. Bosman dated May 8, 2009.  This affirmation accuses defendants of "deceit and misrepresentations" (id. ¶ 2), complaining principally (a) that Lore made a demand in April 2001 for "a list of all employees who ha[d] been reprimanded, counseled, or reported as having violated any and all rules of the City of Syracuse Police Department for the immediate past three years" (id. ¶ 8 (internal quotation marks omitted)); (b) that "[d]efendants" persistently maintained that the request was "unduly burdensome" (id. ¶ 9; see id. ¶ 11); and (c) that Bosman had discovered in 2007, in a different lawsuit, that

63

"[d]efendants" in fact had such a list (id. ¶ 19). Lore requested that the court punish defendants by entering a default judgment against them.

Although Bosman's affirmation suggests that Lore had been denied "repeated" "requests for sanctions" (id. ¶ 14), the affirmation gives no dates of or record citations to such requests or denials; nor has any such information been provided in Lore's briefs on appeal. We have found in the record a 2006 letter to the magistrate judge to whom discovery matters were referred, requesting the imposition of sanctions for what even then was called "a flagrant or at least cavalier disregard of" a discovery order (Letter from A.J. Bosman to Magistrate Judge David E. Peebles dated January 13, 2006 ("Bosman Letter"), at 1). That request was denied by endorsed order dated January 23, 2006, stating that the denial was without prejudice to Lore's right to make a sanctions motion pursuant to Fed. R. Civ. P. 37.

So far as we are aware, Lore did not make such a motion until more than three years later, when, on May 8, 2009, citing evidence discovered in 2007, she moved for a default judgment-- 10 days before the start of trial.

We review a denial of a motion for Rule 37 discovery sanctions for abuse of discretion. See Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 107 (2d Cir. 2002); cf. Perry, 115 F.3d at 149, 154 (applying abuse-of-discretion standard to denial of request, based on allegedly "abusive discovery and vexatious tactics," for sanctions pursuant to, inter alia, Fed. R. Civ. P. 11 and 28 U.S.C. § 1927). In analyzing a district court's ruling on a request for sanctions, we "giv[e] recognition to the premise that the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted." Perry, 115 F.3d at 154 (internal quotation marks omitted).

64

Lore has called nothing to our attention that suggests that the district court's denial of her motion for sanctions on the eve of trial, apparently based on information received years earlier, was an abuse of discretion.

5.  Request for Additional Attorneys' Fees

Following the district court's denial of the parties' posttrial motions, Lore moved for an award of $368,934.29 in attorneys' fees, which included fees for Bosman based on an hourly rate of $275.  Pursuant to 42 U.S.C. § 1988, the district court awarded Lore $167,955.34 in fees and costs, which included fees for Bosman at the hourly rate of $210.  See Lore IV, 2009 WL 2957784, at *2. On this appeal, Lore contends that "[t]he $210.00 hourly rate no longer represents the prevailing hourly rate for experienced attorneys in the Northern District" (Lore's brief on appeal at 54) and that it was an abuse of discretion for the court to award her fees based on that rate.  We disagree.

We review a district court's award of attorneys' fees under § 1988 for abuse of discretion, see, e.g., Bergerson v. New York State Office of Mental Health, 652 F.3d 277, 285 (2d Cir. 2011) ("Bergerson"), mindful that "'[a]buse of discretion'--already one of the most deferential standards of review--takes on special significance when reviewing fee decisions because the district court, which is intimately familiar with the nuances of the case, is in a far better position to make [such] decisions than is an appellate court, which must work from a cold record," McDaniel v. County of Schenectady, 595 F.3d 411, 416 (2d Cir. 2010) (other internal quotation marks omitted).

In Bergerson--which involved a trial before Judge Hurd of Title VII and HRL claims brought by a plaintiff represented at trial by the same attorney who represents Lore--the successful plaintiff requested a fee award based on an hourly rate of $275.  The district court made its fee award

on the basis of an hourly rate of $210. See 652 F.3d at 281. We affirmed, stating in part as follows:

> Here, the District Court, quoting Picinich v. United Parcel Serv., No. 5:01-CV-01868, 2008 WL 1766746, at *2 (N.D.N.Y. Apr. 14, 2008), found that "'[t]he prevailing hourly rates in this district, which are what a reasonable, paying client would be willing to pay, are $210 per hour for an experienced attorney, $150 per hour for an attorney with more than four years experience, $120 per hour for an attorney with less than four years experience, and $80 per hour for paralegals.'" The study upon which Picinich ultimately relies was undertaken by a district court in the Northern District in 2005. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, No. 03-CV-502, 2005 WL 670307, at *7 (N.D.N.Y. Mar. 22, 2005). Since that time, more recent surveys in Northern District cases have indicated that, for a civil rights matter, the prevailing rate in the Northern District is higher than $210. See, e.g., Luessenhop v. Clinton County, N.Y., 558 F.Supp.2d 247, 266 (N.D.N.Y.2008); Martinez v. Thompson, No. 9:04-cv-0440, 2008 WL 5157395, at *14 (N.D.N.Y. Dec. 8, 2008).
>
> In other cases, however, courts in the Northern District have continued to apply the rates set forth in Arbor Hill. See, e.g., Lewis v. City of Albany Police Dept., 554 F.Supp.2d 297, 298-301 (N.D.N.Y.2008); Paramount Pictures Corp. v. Hopkins, No. 5:07-CV-593, 2008 WL 314541, at *5 (N.D.N.Y. Feb. 4, 2008). Given that these courts have continued to adhere to the rates set forth in Arbor Hill, the District Court's award of attorney's fees at $210 per hour is "located within the range of permissible decisions" and does not rest on an "erroneous view of the law." See Sims, 534 F.3d at 132 (internal quotation marks omitted). Thus because our review is for abuse of discretion, we hold that the District Court's award, while perhaps lagging behind the market, was not an abuse of the court's discretion.

Bergerson, 652 F.3d at 290 (emphasis added).

In the present case, the district court's fee decision, rendered before its decision in

Bergerson, relied on essentially the same authorities to reach the same decision, to wit, that

> [t]he prevailing hourly rates in this district, which are what a reasonable, paying client would be willing to pay, are "$210 per hour for an experienced attorney, $150 per hour for an attorney with more than four years experience . . . ." Picinich, 2008 WL 1766746, at *2.

Lore IV, 2009 WL 2957784, at *1. We cannot conclude that the district court's calculation of fees

here, using the same analysis it would thereafter use in Bergerson, applying the same $210 hourly rate

66

for the same attorney in the same type of case tried shortly before Bergerson, was an abuse of discretion.

IV.     THE PARTIES' CONTENTIONS WITH RESPECT TO THE AMOUNT OF DAMAGES TO WHICH LORE IS ENTITLED

Not surprisingly, the parties have widely differing views as to the amount of damages to which Lore is entitled.  As alternatives to its requests for judgment as a matter of law, the City contends that this Court should overturn the district court's denials of its requests to (a) reduce the jury's award of $100,000 against the City for reputational damages to $1 as nominal damages, on the ground that Lore failed to prove any damage to her reputation, and (b) grant a new trial as to Lore's emotional distress damages unless Lore accepts a remittitur of the award to $15,000, on the ground that the jury's award of $150,000 against the City for emotional distress is excessive.

Lore, in opposition, contends that not only is she entitled to the $250,000 the jury awarded her against the City, but that she is entitled to an additional $250,000--against Guy and the City--because the jury awarded her that amount for the retaliatory conduct of Guy.  She thus seeks judgment awarding her compensatory damages totaling $500,000, and she seeks a trial on her summarily dismissed HRL claims for discrimination.  We cannot agree with either side, for we conclude that it was not an abuse of discretion for the district court to deny the City's request for an order of remittitur, but we reach that conclusion largely in light of the intertwined nature of Lore's claims against the City and Guy, and we cannot conclude that such interrelated conduct warrants the doubling of an already generous award.

67

It is well established that the trial judge enjoys "discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence," and that "[t]his discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433 (1996) (internal quotation marks omitted). A conditional order of remittitur, requiring a plaintiff to choose either a new trial or a reduced verdict, may be granted where, inter alia, "the award is intrinsically excessive in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error." Shu-Tao Lin v. McDonnell Douglas Corp., 742 F.2d 45, 49 (2d Cir. 1984) (internal quotation marks omitted); see Kirsch v. Fleet Street, Ltd., 148 F.3d at 165. "Where there is no particular discernable error, we have generally held that a jury's damage award may not be set aside as excessive unless 'the award is so high as to shock the judicial conscience and constitute a denial of justice.'" Id. (quoting O'Neill v. Krzeminski, 839 F.2d 9, 13 (2d Cir. 1988) (other internal quotation marks omitted)). Under New York law, which is pertinent to the extent that Lore was found entitled to recover under the HRL, see, e.g., Gasperini, 518 U.S. at 418-19, an award is deemed excessive "if it deviates materially from what would be reasonable compensation," N.Y. C.P.L.R. § 5501(c).

In the present case, the district court denied the City's posttrial motion for a conditional remittitur, stating that, "[b]ased upon evidence at trial, the jury's award of compensatory damages was fair and reasonable, and did not shock the conscience." Lore III, 2009 WL 2473508, at *2. We review that determination for abuse of discretion, see, e.g., Gasperini, 518 U.S. at 434-36, taking into account amounts awarded in other, comparable cases, see, e.g., DiSorbo v. Hoy, 343 F.3d 172, 183

(2d Cir. 2003), and we will not "vacate or reduce a jury award merely because we would have granted a lesser amount of damages," Nairn v. National R.R. Passenger Corp., 837 F.2d 565, 566-67 (2d Cir. 1988).

Neither cases arising under federal law nor those arising under state law provide a clear line as to whether an award of $150,000 for emotional distress on the basis of a trial record such as that created in the present case deviates so materially from what would be reasonable compensation as to shock the judicial conscience. This Court has, however, affirmed awards of $125,000 each to plaintiffs for emotional distress resulting from age discrimination where the evidence of emotional distress consisted only of "testimony establishing shock, nightmares, sleeplessness, humiliation, and other subjective distress," as well as awards of $175,000 each where in addition there were "either physical sequelae"--i.e., secondary physical results or consequences--"or professional treatment," Meacham v. Knolls Atomic Power Laboratory, 381 F.3d 56, 77 (2d Cir. 2004) ("Meacham"), vacated and remanded for further consideration on other grounds, 544 U.S. 957 (2005); see id. at 77-78. In Meacham, in which the emotional distress damages were awarded under the HRL, we rejected the defendant's contention that those damage awards, for "garden variety emotional distress claims," "should have been reduced to between $5,000 and $30,000," id. at 77. We observed that

> New York cases vary widely in the amount of damages awarded for mental anguish. Many do reduce awards to $30,000 or below. See, e.g., In re Buffalo Athletic Club, 249 A.D.2d 986, 672 N.Y.S.2d 210, 211 (1998); In re Manhattan and Bronx Surface Transit Operating Auth., 220 A.D.2d 668, 632 N.Y.S.2d 642, 644 (1995); In re New York State Office of Mental Retardation and Developmental Disabilities, 183 A.D.2d 943, 583 N.Y.S.2d 580, 582 (1992); In re City of Fulton, 221 A.D.2d 971, 633 N.Y.S.2d 914, 915 (1995). However, other cases uphold awards of more than $100,000 without discussion of protracted suffering, truly egregious conduct, or medical treatment. See, e.g., Rio Mar Rest. v. NYSDHR, 270 A.D.2d 47, 704 N.Y.S.2d 230, 231 (2000); In re Allender, 233 A.D.2d 153, 649 N.Y.S.2d 144, 145 (1996); Boutique Indus., Inc. v. NYSDHR, 228 A.D.2d 171, 643 N.Y.S.2d 986, 986

69

(1996). For truly egregious conduct with severe and verified results on a complainant's mental and physical health, courts have upheld awards far in excess of the amounts upheld here. See, e.g., In re New York City Transit Auth., 181 A.D.2d 891, 581 N.Y.S.2d 426, 428-29 (1992). In addition, the passage of time since the cited cases were decided could reasonably support higher verdicts. When confronted with the range of mental anguish verdicts approved under New York law, we do not find the verdicts in this case to deviate substantially from verdicts awarded under similar circumstances.

Meacham, 381 F.3d at 78 (emphases added).

Lore's evidence of her pain, suffering, and emotional distress, summarized in Part I.C. above, included her own testimony and the testimony of her mother, that Lore had suffered, inter alia, tension headaches, abdominal pain, insomnia, anxiety, and depression. They testified that whereas Lore had been a gregarious and vivacious person before the events of 2000 and 2001, she thereafter suffered from stress, had stomach problems, and became reclusive. (See, e.g., Tr. 189-93, 568-69.) Her mother testified that Lore looked like a ghost (see id. at 568), "wouldn't talk" to anyone, and "cried and cried and cried" (id. at 569). In addition, Lore received medical treatment, the physical side effects of which included vomiting and diarrhea. Her medical records showed, inter alia, that her physician insisted that she remain out of work for a period in June 2001 to receive treatment for her depression (see PX ZZ). This evidence is qualitatively similar to that presented in Meacham, in which we approved emotional distress awards of $125,000 to $175,000.

Yet there are two significant differences between Lore's case and Meacham. First, Lore's emotional distress evidence related in part to a period that preceded any of the retaliatory acts the jury found the City--or any of its employees--to have performed. Although the evidence was that Lore's emotional and physical distress lasted at least until the summer of 2001, it also showed clearly that that distress had begun in January or February 2000, when Lore, inter alia, was ordered to wear a uniform to work--the only officer in that unit not allowed to dress in plainclothes--and lost a

requested CRD position to a more junior officer. Thus, as the case was submitted to the jury, the City's earliest retaliatory act was found to have been committed in September 2000--more than half a year after Lore first experienced the distress for which she sought professional treatment. In September 2000 and thereafter, the jury found, the City--if the acts of Guy are ignored--retaliated against Lore for filing her complaints of discrimination only by threatening her with criminal prosecution unless she withdrew the discrimination complaints, suspending her without pay for 10 days after she refused to do so, and attempting to have her prosecuted.

Second, in Meacham, the plaintiffs had lost their jobs. In the present case, Lore did not lose her job, did not lose her rank, and did not lose her salary or fringe benefits, except to the extent of her 10-day suspension. One would not reasonably expect emotional distress on the part of Lore--resulting from (a) the threat of prosecution if she did not withdraw her complaints of discrimination and (b) the 10-day suspension--to be on a par with the emotional distress suffered by a person who was discriminatorily fired. Further, although the City made actual attempts to have the district attorney prosecute Lore, those attempts could not be found to have caused reputational injury or significant emotional distress as there was no evidence that they were publicized, and they apparently were not known even to Lore herself until she brought the present lawsuit (see Tr. 198-99). Were it not for the publicity including the negative comments by Guy, we would conclude that the district court should have ordered a remittitur.

Sufficient evidence to support the jury's awards against the City of $100,000 for reputational injury and $150,000 for emotional distress, however, is found in the publicity in which Guy participated, making Lore's suspension public and casting it in a way that allowed the jury to infer that members of the public were left with the false impression that Lore had stolen other officers'

71

paychecks. The jury had been instructed that if it found that any of the individual defendants had unlawfully retaliated against Lore, the City would be liable. Although separate questions were posed with respect to the conduct of Guy and the conduct of unidentified or nonparty City officials who threatened Lore with prosecution and ordered her suspension, we are unable to conclude that the verdict of $250,000 against the City is not excessive unless we infer that the jury considered the evidence as a whole and gave that award in recognition of the City's threat and suspension not in isolation but in connection with the damaging publicity thereafter promoted by the City's corporation counsel, motivated by retaliatory intent.

In sum, the jury was properly instructed that, if it found Lore to have proven all of the elements of her retaliation claims against any defendant (see Tr. 1236), it should award her such damages as it found to be "adequate," "fair, just, and reasonable" for the emotional distress it found she suffered "as a direct result of the incident in question" (id. at 1237 (emphasis added)). And it was instructed that Lore "has the burden to prove that her injuries would not have occurred without defendants' retaliatory conduct." (Tr. 1232.) Given all the evidence, including the damaging publicity generated by Guy' retaliatory conduct and the evidence that Lore seemed near a nervous breakdown (see Tr. 567-68) and deep into June of 2001 was still being treated for depression, it was within the jury's prerogative to find that although Lore suffered emotional distress prior to September 2000, her distress was perpetuated and/or exacerbated by the City's retaliatory conduct in September 2000 and massively so by the suspension-generated publicity in November 2000 falsely indicating that Lore, a police officer, had stolen other officers' paychecks. Although the amount of the $250,000 award with respect to the retaliatory events of September-November 2000 strikes us as generous, we cannot conclude that the district court's refusal to order a remittitur, given its finding that the award was

72

justified by the evidence, "was fair and reasonable, and did not shock the conscience," Lore III, 2009 WL 2473508, at *2, constituted an abuse of discretion.

By the same token, since we are able to reach that conclusion only by considering the jury's findings as to the conduct of Guy, we cannot conclude that the fact that Guy was not entitled to qualified immunity for his HRL violation entitles Lore to the doubling of a verdict we already consider to be generous. Lore is, however, entitled, for the reasons set out in Part III.A. above, to have the present judgment--assuming that she does not opt for a retrial, see also Part V below-- amended to reflect that she prevailed on her HRL claim against Guy. We leave it to the district court to fashion a conditional order of remittitur that gives Lore the option of accepting a total award of compensatory damages, on her Title VII and HRL claims against the City and her HRL claim against Guy, that is no higher than "the maximum amount that would be upheld by the district court as not excessive," Earl v. Bouchard Transportation Co., 917 F.2d 1320, 1330 (2d Cir. 1990), or having a new trial on both sets of claims.

## V.  FURTHER PROCEEDINGS IN THIS COURT AND ON REMAND

For the reasons stated in Part III.B. above, the district court erred in granting summary judgment dismissing Lore's HRL claims of gender discrimination against Bernardi and the City based on her removal from the PIO position.  Lore was entitled to have her trial encompass those claims. For the reasons stated in Part II above, we have been unpersuaded by the City's arguments that there was reversible error in the judgment granted against it on Lore's HRL and Title VII claims of retaliation.  If the issues with respect to Lore's claims of retaliation and her claims of discrimination

73

were clearly separable and had been treated more discretely at trial, we would simply remand for trial of those discrimination claims, for it would ordinarily be possible to have a trial of claims of discrimination without bringing in the fact that the complaints of discrimination led to acts of retaliation. See generally Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500-01 (1931) (reversing order for a retrial limited to damages where some relevant factors leading to the jury's verdict on liability were unclear); id. at 500 ("Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."); Crane v. Consolidated Rail Corp., 731 F.2d 1042, 1050-51 (2d Cir. 1984) (new trial warranted only on issue of contributory negligence and not on damages where a "'misconception of the law and the evidence'" with respect to the former did not affect the jury's determination of the latter issue).

However, it is indisputable here that there was considerable discussion at trial as to Lore's complaints of discrimination, in part necessitated by the fact that the acts of retaliation were alleged to have been motivated by Lore's complaints of discrimination. For example, as background for her allegations of retaliation, Lore was allowed to testify to her appointment in 1996 as public information officer for the Department, serving as SPD's liaison with the media, working directly for the chief of police, and having an office of her own in the chief's office (e.g., Tr. 95-96). She testified to being removed as PIO and filing grievances thereafter, alleging gender discrimination. But the testimony and arguments went well beyond the mere fact that Lore had filed complaints of discrimination. Lore also testified to the differences between her duties as PIO and her duties after reassignment, for example, being reassigned to the Department's technical operations section, in which her duties were to "overs[ee] telephones, cell phones, pagers, portable radio[s]" and other

communication devices. (Id. at 98.) She testified that she was replaced in the PIO position by a male, and said, "To get denied because I am a woman, dead wrong" (id. at 101).

Defendants, for their part, argued not only that there was no retaliation, but also that Lore had not been the victim of discrimination. (See, e.g., Tr. 80 ("You will never hear that Sergeant Lore suffered demotions . . . ."); id. at 1136 ("I think . . . you will conclude at the end of this case that there were no acts of discrimination . . . .").)

As indicated in Part IV above, although we do not conclude that the district court abused its discretion in rejecting the City's contention that the jury's award of $250,000 in compensatory damages was excessive, that award for reputational injury and emotional distress caused by the retaliatory acts the jury found to have occurred in September, November, and December of 2000 strikes us as large. And it is entirely possible that the jury, while heeding the court's instructions not to concern itself with the merits of Lore's discrimination claims, was influenced in the direction of generosity by the evidence as to Lore's underlying claims of gender discrimination with respect to her removal from the prestigious PIO position and her transfer to positions involving supervision of cell phones and patrol cars.

Thus, it is not clear to us that a trial limited to Lore's claims of discrimination based on her removal from the PIO position might not result in an award that in part overlaps the generous $250,000 verdict already returned by the jury on her claims of retaliation. Accordingly, to prevent the injustice of a duplicative award, we conclude that if Lore's discrimination claims against Bernardi and the City are to be tried, there should also be a retrial of her retaliation claims against the City and Guy (the latter claims themselves being intertwined as discussed in Part IV above), so that a single jury may consider the circumstances of all of those claims and render a verdict that appropriately compensates Lore with respect to all of the claims it finds proven.

75

Nonetheless, since we have found no reversible error in the judgment against the City, and since Lore may wish to forgo a trial on her discrimination claims against Bernardi and the City in order to retain the damages, attorneys' fees, and costs awarded in the present judgment, we will make our order for a new trial conditional: We will give Lore the option of either having the present judgment in her favor vacated and having a new trial encompassing both the discrimination claims against Bernardi and the City and the retaliation claims against the City and Guy, or forgoing a trial of those discrimination claims and retaining the benefits of the present judgment.

If Lore elects to proceed to trial, the judgment awarding her damages, attorneys' fees, and costs will be vacated. Her eventual entitlement to those monetary awards will depend on the outcome of the new trial. See generally Hanrahan v. Hampton, 446 U.S. 754, 756-58 (1980) (a § 1983 plaintiff who has won only an interim battle that may in the end be meaningless is not a prevailing party entitled to attorneys' fees under 42 U.S.C. § 1988); id. at 758-59 (reversing award of attorneys' fees to plaintiffs for success on appeal from the granting of a directed verdict against them, thereby entitling them to a retrial, stating that if plaintiffs lost at trial "it could not seriously be contended that [they] had prevailed"); Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983) (same standards are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"); Bridges v. Eastman Kodak Co., 102 F.3d 56, 58 n.1 (2d Cir. 1996) (§ 1988 cases are authoritative in Title VII attorneys' fees context), cert. denied, 520 U.S. 1274 (1997). That vacatur will become effective if Lore elects to proceed to trial as indicated above.

If Lore elects to forgo trial on the discrimination claims, the judgment of the district court will be affirmed except to the extent that it dismissed Lore's HRL claims for retaliation against Guy; that part of the order will be vacated, and the matter will be remanded for entry of a conditional

76

order of remittitur consistent with Part IV above. If Lore accepts the remittitur, she will be entitled, in addition to the fees and costs awarded in the present judgment, to an award of reasonable attorneys' fees for her opposition to the City's present appeal, although not for her cross-appeal, see generally Lightfoot v. Union Carbide Corp., 110 F.3d 898, 913-14 (2d Cir. 1997) (a plaintiff whose federal civil rights claim was properly dismissed and who prevailed only under a state statute, such as the HRL, that does not authorize an award of attorneys' fees is not entitled to an award of fees, even if the claims are intertwined, because she is not a prevailing party on the federal civil rights claim). If Lore opts instead for retrial of her retaliation claims against the City and Guy, her entitlement to attorneys' fees with respect to the present appeal will abide the outcome of her new trial and the ultimate determination of whether she is a prevailing party.

CONCLUSION

We have considered all of the parties' contentions in support of their respective positions on appeal, to the extent that they are properly before us, and have found them to be without merit except as indicated above. Our judgment on these appeals is as follows:

(A) We **unconditionally affirm** so much of the judgment as (1) dismissed all of Lore's claims against the individual defendants, except her HRL discrimination claim based on her removal from the PIO position ("HRL removal claim") against Bernardi and her HRL retaliation claim against Guy; (2) dismissed Lore's Title VII claims against the City for acts prior to September 19, 1999; and (3) dismissed all other claims against the City, except Lore's HRL removal claim and her Title VII and HRL retaliation claims.

(B) We **unconditionally vacate** so much of the judgment as dismissed Lore's retaliation claim against Guy under the HRL, and we remand either for retrial of that claim with others specified in paragraph (C) or (D), or for a remittitur, depending on the option chosen by Lore.

(C) We <u>conditionally vacate</u> so much of the judgment as (1) dismissed Lore's HRL removal claims against Bernardi and the City, and (2) awarded Lore damages, costs, and attorneys' fees against the City on her Title VII and HRL claims of retaliation; and we give Lore the opportunity to avoid the vacatur by withdrawing so much of her appeal as challenges the summary dismissal of her HRL removal claims within 21 days of the filing of this opinion. If Lore does not withdraw that portion of her appeal within that time, the parts of the judgment specified in this paragraph will be vacated and the matter will be remanded to the district court for trial of Lore's HRL removal claims against Bernardi and the City together with retrial of her retaliation claims against the City under Title VII and the HRL and her retaliation claim against Guy under the HRL.

(D) In the event that Lore withdraws her appeal from the dismissal of her HRL removal claims against Bernardi and the City within the time specified in paragraph (C) above, the judgment will--in addition to the unconditional affirmances set forth in paragraph (A) above and the unconditional vacatur set forth in paragraph (B) above-- be affirmed insofar as it dismissed Lore's HRL removal claims against Bernardi and the City, and the matter will be remanded to the district court for the entry of a conditional order of remittitur with respect to Lore's HRL retaliation claim against Guy, as set forth in Part IV above.

(E) We <u>conditionally affirm</u> so much of the judgment as awarded costs and attorneys' fees to Lore as a prevailing party in this litigation. This affirmance will become final if Lore (a) opts to withdraw her appeal from the dismissal of her HRL removal claims against Bernardi and the City within the time specified in paragraph (C) above, and (b) opts to accept the remittitur conditionally ordered by the district court on remand, by such deadline as that court shall set. If Lore chooses both of these options, she will also be entitled to reasonable attorneys' fees with respect to the present appeal by the City, the amount to be determined by the district court. In the event that Lore rejects either or both of these options, her right to any attorneys' fees will not be known until the outcome of the new trial, including any posttrial proceedings and appeals, determines whether she is a prevailing party.

Defendant City of Syracuse shall pay plaintiff the normal costs on its appeal; on the cross-appeal, each side shall bear its own costs.